NATHAN J. PACKARD and MOSES PACKARD, Respondents, v. LOUIS WINDHOLZ, Appellant.

*Accommodation indorsement of a promissory note — the indorser is liable to one purchasing the note, with knowledge thereof — effect of the note being raised after the indorsement.*

An indorser upon a promissory note guarantees the genuineness of the signature of each prior indorser, and that the note is a valid subsisting obligation.

A person who indorses a note for the accommodation of the maker, with knowledge that the note is to be used for the benefit of the maker, is not relieved from liability to a person to whom the maker negotiates the note for value, simply because the latter knew of the accommodation nature of the indorsement.

*Semble*, that if the note be raised by the maker, without the knowledge of the accommodation indorser, subsequent to such indorsement, the accommodation indorser is only liable for the amount of the note as indorsed by him.

APPEAL by the defendant, Louis Windholz, from a judgment of the County Court of Onondaga county, entered in the office of the clerk of the county of Onondaga on the 13th day of April, 1903, upon an order of said County Court, entered in said clerk's office on the 13th day of April, 1903, affirming a judgment of the Municipal Court of the city of Syracuse in favor of the plaintiffs, and also from the said order upon which such judgment was entered.

*Frank Hopkins,* for the appellant.

*Samuel Packard,* for the respondents.

SPRING, J.:

Adolph Truman made his promissory note for fifty dollars, dated July 31, 1902, to the order of C. D. Eaton, and due in three months

from its date.  The maker forged the indorsement of Eaton, who was his father-in-law, to the note and then procured the defendant to indorse the same.  The note, with these two indorsements appearing upon it, was presented to the plaintiffs, who were note brokers, to be by them negotiated for the benefit of Truman.  The plaintiffs obtained one Packelnisky to indorse it, and, after indorsing it themselves, sold it to the New York State Banking Company for fifty-five dollars and turned over the avails to the maker.  The defendant and those subsequent to him believed the indorsement of Eaton was genuine, and the plaintiffs learned he was responsible.  The banking company soon after suspended business, and before the maturity of the note it was taken up by the plaintiffs.

The maker also presented to the plaintiffs a note of $120 bearing the apparent indorsement of Eaton and the genuine signature of the defendant on its back, and this was put in circulation for the benefit of Truman and purchased by the plaintiffs before maturity, the same as the note above described.  The latter note, when indorsed by the defendant, was $20, and was fraudulently raised to $120 before it was presented to the plaintiffs.  The notes were duly protested for non-payment, and due notice thereof given to the defendant.  The plaintiffs have been allowed to recover on the first note and $20 on the second note.

The defendant, by his contract of indorsement, guaranteed the genuineness of the signature of Eaton, the prior indorser on each note, and that the note was a "valid and subsisting" obligation. (Neg. Inst. Law [Laws of 1897, chap. 612], § 116; *Lennon* v. *Grauer*, 159 N. Y. 433; *Erwin* v. *Downs*, 15 id. 575.)

The defendant expected that the note was to be negotiated for the benefit of the maker.  He indorsed at his request, and the note was put in circulation not only within the legal contemplation of the contract of indorsement entered into by the defendant, but as he, in fact, intended.  To be sure, the plaintiffs knew the note was to be used for the benefit of the maker, and that the defendant indorsed for his accommodation.  These circumstances do not relieve the indorser from the effect of his contract.  (Neg. Inst. Law, §§ 50, 55, as amd. by Laws of 1898, chap. 336.)  One cannot enter into this contract knowing that he is indorsing solely for the benefit of another and then shield himself from the enforcement of the agree-

ment because the purchaser is apprised that the indorsement is without actual consideration. Such a construction of the contract of indorsement would impair materially the transfer of commercial paper and nullify the effect of the contract.

The plaintiffs negotiated the notes without any knowledge or suspicion of any infirmity in them. They then purchased them before maturity from a *bona fide* holder still without any information as to any vice in them. They are holders in good faith. (Neg. Inst. Law, §§ 91, 95–98.)

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.