### PACKARD et al. v. WINDHOLZ.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1903.)

1. BILLS AND NOTES—SUBSEQUENT INDORSER—CONTRACT—EFFECT.

A subsequent indorser of a note by his indorsement guarantied the genuineness of the signature of the prior indorser, and that the note was "a valid and subsisting obligation," as provided by Negotiable Instruments Law, § 116 (Laws 1897, p. 734, c. 612), though such prior indorsement had been forged by the maker.

2. SAME—ACCOMMODATION INDORSEMENT.

Where the holder of a note was a bona fide holder for value, it was not material to a subsequent indorser's liability that he indorsed the note merely for the maker's accommodation, and that such fact was known to the holder.

Appeal from Trial Term, Onondaga County.

Action by Nathan J. Packard and another against Louis Windholz. From a judgment of the County Court reversing a judgment of the Municipal Court of the City of Syracuse (82 N. Y. Supp. 392) in favor of plaintiffs, defendant appeals. Affirmed.

¶ 1. See Bills and Notes, vol. 7, Cent. Dig. § 674.

Argued before. McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Frank Hopkins, for appellant.
Samuel Packard, for respondents.

SPRING, J. Adolph Truman made his promissory note for $50, dated July 31, 1902, to the order of C. D. Eaton, and due in three months from, its date.   The maker forged the indorsement of Eaton, who was his father-in-law, to the note, and then procured the defendant to indorse the same.   The note, with these two indorsements appearing upon it, was presented to the plaintiffs, who were note brokers, to be by them negotiated for the benefit of Truman.   The plaintiffs obtained one Packelnisky to indorse it, and, after indorsing it themselves, sold it to the New York State Banking Company for $55, and turned over the avails to the maker.   The defendant and those subsequent to him believed the indorsement of Eaton was genuine, and the plaintiffs learned he was responsible.   The banking company soon after suspended business, and before the maturity of the note it was taken up by the plaintiffs.   The maker also presented to the plaintiffs a note of $120, bearing the apparent indorsement of Eaton and the genuine signature of the defendant on its back, and this was put in circulation for the benefit of Truman, and purchased by the plaintiffs before maturity, the same as the note above described.   The latter note, when indorsed by the defendant, was $20, and was fraudulently raised to $120 before it was presented to the plaintiffs.   The notes were duly protested for nonpayment, and due notice thereof given to the defendant.   The plaintiffs have been allowed to recover on the first note, and $20 on the second one.

The defendant, by his contract of indorsement, guarantied the genuineness of the signature of Eaton, the prior indorser on each note, and that the note was a "valid and subsisting" obligation.   Negotiable Instruments Law, § 116 (chapter 612, p. 734, Laws 1897); Lennon v. Grauer, 159 N. Y. 432, 54 N. E. 11; Erwin v. Downs, 15 N. Y. 575.   The defendant expected that the note was to be negotiated for the benefit of the maker.   He indorsed at his request, and the note was put in circulation not only within the legal contemplation of the contract of indorsement entered into by the defendant, but as he in fact intended.   To be sure, the plaintiffs knew the note was to be used for the benefit of the maker, and that the defendant indorsed for his accommodation.   These circumstances do not relieve the indorser from the effect of his contract.   Negotiable Instruments Law, § 50 (Laws 1897, p. 727, c. 612).   One cannot enter into this contract, knowing that he is indorsing solely for the benefit of another, and then shield himself from the enforcement of the agreement because the purchaser is apprised that the indorsement is without actual consideration.   Such a construction of the contract of indorsement would impair materially the transfer of commercial paper, and nullify the effect of the contract.   The plaintiffs negotiated the notes without any knowledge or suspicion of any infirmity in them.   They then purchased them before maturity from a bona fide holder, still without any

information as to any vice in them. They are holders in good faith. Negotiable Instruments Law, §§ 95–98 (Laws 1897, pp. 732, 733, c. 612). The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.