Argued 12 March, decided 9 April, 1907.

### CELLERS v. MEACHEM.

10 L. R. A. (N. S.) 133: 89 Pac. 426.

BILLS AND NOTES—EFFECT OF SIGNING AS SURETY.

1. One of several signers of a promissory note . does not affect his primary liability thereon by adding the word "surety" to his signature, though it may affect the relative rights of the signers between themselves.

BILLS—ACCOMMODATION MAKER—KNOWLEDGE OF HOLDER.

2. That a joint maker of a negotiable note signed solely for the accommodation of his comaker, which was known to a transferee when he purchased, is not a defense, under the Negotiable Instruments Act: B. & C. Comp. § 4431.

NOTES—LIABILITY OF ACCOMMODATION MAKER AFTER EXTENSION OF TIME WITHOUT HIS KNOWLEDGE.*

3. Under the Negotiable Instruments Act (Laws 1899, pp. 18, 44, B. & C. Comp. §§ 4431, 4521, 4522, 4592), defining an accommodat'on maker, and

---

*NOTE.—See note in 10 L. R. A. (N. S.) 129, effect under negotiable instruments law of extension of time to princpal to release one who, on thie face of the instrument, is primarily liable, but who is in fact a surety.                    REPORTER.

making him liable on the instrument to a holder for value, and providing that a negotiable instrument is discharged by payment, etc., an accommodation maker of a note is not relieved from liability by an extension of time of payment without his consent.

From Douglas: LAWRENCE T. HARRIS, Judge.

Statement by MR. COMMISSIONER KING.

This is an action on a promissory note brought by Ada, Marie and Bessie Cellers against E. L. Meachem and Joseph Lyons. The note was executed December 27, 1904, and runs "90 days after date, without grace, we promise to pay," etc.; and is signed by Meachem and by Lyons, with the word "surety" added to the name of the latter. The complaint is in the usual form. Meachem having failed to appear, default was entered against him. Lyons answered, admitting the execution of the note, and, for an affirmative defense, pleaded that he signed the instrument as a surety only, without consideration, and for the sole use and benefit of Meachem and of the plaintiffs; that the payees had full knowledge of the conditions under which it was executed; that, after the note had matured, plaintiffs, in consideration of additional security given them by Meachem, and without the knowledge or consent of Lyons, extended the time of payment: and that by reason thereof he was relieved from all liability. At the trial evidence was admitted, over plaintiffs' objections and exceptions, tending to show an agreement extending the time as alleged. At the close of the trial, their counsel requested the court to direct a verdict in favor of their clients for the sum demanded, there being no dispute as to the amount due, which request was denied. The court, at defendant's request, instructed the jury, among other things, that if they found plaintiffs, after maturity of the note, entered into an agreement with Meachem extending the time of its payment, without the consent of Lyons, no recovery could be had against him. Exceptions were taken to this part of the charge, and also to the refusal of the court to direct a verdict for plaintiffs. The jury returned a verdict for defendant, and, from a judgment thereon, plaintiffs appeal.    REVERSED.

For appellants there was a brief over the name of *Fullerton & Orcutt,* with an oral argument by *Mr. Albert Newton Orcutt.*

For respondent there was a brief over the name of *Coshow & Rice,* with an oral argument by *Mr. Oliver Perry Coshow.*

Opinion by Mr. COMMISSIONER KING. .

Several errors are assigned, but the only one necessary for determination is whether or not the alleged agreement between plaintiffs and Meachem, extending the time of payment of the note, relieved Lyons from liability thereon. There is no conflict in the testimony on the issues involved, but counsel for appellants contend that the answer and the proof were insufficient to establish a valid agreement extending the time of payment. Under the conclusion reached, it will be unnecessary to consider the question of the sufficiency of the pleadings or the evidence on this point. It will be assumed, for the purposes of this opinion, that the alleged agreement was sufficient, under the law as recognized by the decisions of this court prior to the adoption of the Negotiable Instruments Act of 1899. Pursuant to this theory, if that act makes no change in the prior law, no judgment could be rendered against Lyons upon the facts admitted; but, if such act did change the rule in this respect, then the court erred, as claimed by plaintiffs. The Negotiable Instruments Act became a law May 17, 1899, and is entitled: "An act relating to negotiable instruments—being an act to establish a law uniform with the laws of other states on that subject": Laws 1899, pp. 18, 44 (B. & C. Comp. §§ 4403-4594). It will be observed that the note sued upon was executed after the act took effect. The question, therefore, to be considered, is whether or not this act changed the rule previously recognized in this state. The effect of the statute upon the relation of the parties depends upon whether Lyons was primarily liable on the note. If his liability was secondary, the right to recover against him would be dependent upon the proving of the agreement as alleged: B. & C. Comp. § 4522.

Prior to May 17, 1899, a valid agreement entered into between a principal and the payee of a negotiable instrument,

binding the latter, without the assent of the surety, whereby the time of its payment was extended, relieved the accommodation maker, whether his liability was primary or secondary, and the existence of such agreement could be shown by parol: *Findley* v. *Hill*, 8 Or. 247, 249 (34 Am. Rep. 578) ; *Brown* v. *Rathburn*, 10 Or. 158; *Hughes* v. *Pratt*, 37 Or. 45 (60 Pac. 707) ; *Hoffman* v. *Habighorst*, 38 Or. 261 (63 Pac. 610: 53 L. R. A. 908).

1. The word "surety," appended to the name of a maker of a note, cannot alter his liability as to the owner thereof, and only shows that, as between the promisors, one is a principal and the other a guarantor: *Bowen* v. *Clarke*, 25 Or. 592 (37 Pac. 74) ; *Hoffman* v. *Habighorst*, 38 Or. 261 (53 L. R. A. 908: 63 Pac. 619) ; *Galloway* v. *Bartholomew*, 44 Or. 75 (74 Pac. 467). Since the word "surety" can only affect the status of the makers of the note as between themselves, and as Lyons' liability to the plaintiffs is the same as if he had signed the instrument without using the qualifying word after his name, he became, in the language of the negotiable instruments act, "absolutely required to pay the same," and is therefore primarily liable: B. & C. Comp. § 4592; *Hughes* v. *Ladd*, 42 Or. 123 (69 Pac. 548) ; *Galloway* v. *Bartholomew*, 44 Or. 75 (74 Pac. 467) ; *National Citizens' Bank* v. *Toplitz*, 178 N. Y. 466 (71 N. E. 1) ; same case, 81 App. Div. 593 (81 N. Y. Supp. 422).

2. The fact that Lyons executed the note solely for the benefit of Meachem, and plaintiffs were aware of these conditions, is of no avail, for a person cannot enter into a contract, even though solely for the benefit of another, and then shield himself from responsibility on the theory that the purchaser has knowledge that his acts are without actual consideration: B. & C. Comp. § 4431; *Packard* v. *Windholz*, 88 App. Div. 365 (84 N. Y. Supp. 666).

3. The negotiable instruments law defines what constitutes an accommodation maker, and specifies how negotiable instruments may be discharged; the sections thereon being as follows:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to

some other person. Such person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party": B. & C. Comp. § 4431.

"A negotiable instrument is discharged (1) by payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancellation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or after the maturity in his own right": B. & C. Comp. § 4521.

"A person secondarily liable on the instrument is discharged (1) by any act which discharges the instrument; (2) by the intentional cancellation of his signature by the holder; (3) by the discharge of a prior party; (4) by a valid tender of payment made by a prior party; (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; (6) by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved": B. & C. Comp. § 4522.

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same": B. & C. Comp. § 4592.

These sections, as quoted, with the exception of the clause "unless made with the assent of the party secondarily liable" (Section 4522), are identical with the language used in the New York act on the subject: 2 Rev. St. N. Y. (Birdseye Ed.) 1901, pp. 2466, 2472, 2484, §§ 3, 55, 200, 201. After the adoption of this act in that state, the same questions raised here were urged there, in the case of *National Citizens' Bank* v. *Toplitz,* 178 N. Y. 466 (71 N. E. 1), but the Court of Appeals, finding the cause must be reversed on the ground that a sufficient consideration for the extension of the time of payment had not been alleged, declined to pass on the effect of the new act, though, when the case was theretofore considered by the Appellate Division of the Supreme Court (81 App. Div. 593: 81 N. Y.

Supp. 422), it was determined that under the new law an accommodation maker was primarily liable, notwithstanding any knowledge the holder of the instrument might have had as to his relationship with the principal. While this act has been adopted in practically the same form in other states, its effect upon the law prevailing prior to its enactment does not appear to have been passed upon by the courts; but the authors of a very recent work, in discussing the New York statute, after pointing out that it only provides for the discharge of a person secondarily liable, that a person is primarily liable who by the terms of the instrument is absolutely required to pay it, and that all others are secondarily liable, make the following observation: "It would seem to follow that the statute has disposed of the conflict of authority upon this question by holding the accommodation acceptor or maker to his apparent engagement as a principal debtor, and making him liable notwithstanding an indulgence given to the indorser or drawer for whose benefit he became a party to the instrument": Eaton & Gilbert, Com. Paper, § 123*f*.

What is expressed in an act is deemed exclusive, when it is creative, or in derogation of some existing law, or of some of the provisions of a particular act: 2 Sutherland, Stat. Const. (Lewis' 2 ed.), § 491. It is indicated in the title of the act under consideration that its purpose is "to establish a law uniform with the laws of other states on that subject." Inasmuch as the enactments relating to negotiable instruments differed in the various states, and as the decisions interpreting both the common-law and legislative provisions were far from being harmonious, it must be inferred, from the language constituting the title of the act, that it was intended to provide a complete and comprehensive law on this subject; and since it defines an accommodation maker, making him primarily liable, and in one section designates how negotiable instruments may be discharged, but contains no provision whereby a person primarily liable can be released, except by payment, etc., and in the section following specifies the manner in which persons secondarily liable may

be relieved of responsibility on such instrument, it follows that the immunities indicated there were intended to exclude all exceptions not contained therein, under the familiar maxim: *"Expressio unius est exclusio alterius."* It is, therefore, clear, under the well-settled rules governing the construction of statutes, that when this act, which, in effect, declares that all persons signing a negotiable instrument shall be liable, whether executed for a valuable consideration or as an accommodation maker, and then specifies the particular manner in which negotiable instruments may be discharged, designating, as an exception thereto, that, when the liability is secondary, it may be avoided by any valid agreement extending the time of payment, etc., without such person's consent, was passed, it was the intention of the legislative assembly to make such provisions exclusive of all others. We are of the opinion that the Negotiable Instruments Act substitutes its provisions for the former law, as recognized by this court prior to 1899.

It follows that plaintiffs were entitled to the instruction asked, and the court erred in charging the jury to the effect that the agreement for the extention of the time of payment of the note, if proved as alleged, would preclude a recovery against Lyons. The judgment appealed from should, accordingly, be reversed, and the cause remanded for proceedings not inconsistent with this opinion.                                    REVERSED.