## WOLSTENHOLME v. SMITH et al.

### No. 1897.  Decided April 14, 1908 (97 Pac. 329).

BILLS AND NOTES—ACCOMMODATION MAKER—DISCHARGE FROM LIA-
BILITY—"PERSON PRIMARILY LIABLE."  Under the negotiable in-
struments law (Laws 1899, pp. 127, 130, 131, 137, 138, 147, c. 83,
sections 29, 60, 63, 119, 120, 192), defining an accommodation
maker, making him liable to a holder for value, providing that
a negotiable instrument is discharged by payment, etc., and
that a person secondarily liable on the instrument is discharged
by any act which will discharge a simple contract for the pay-
ment of money, etc., and defining a person primarily liable as
one who by the terms of the instrument is absolutely required
to pay the same, etc., an accommodation maker of a note is not
relieved from liability by an extension of time of payment with-
out his knowledge or consent.

APPEAL from District Court, Third District; T. D. Lewis,
Judge.

Action by Daniel Wolstenholme, special administrator of
the estate of James Megeath, deceased, against Grant H.
Smith and another.  From a judgment for plaintiff, defend-
ant J. E. Darmer appeals.
AFFIRMED.

*Stephens, Smith & Porter* for respondent.

*S. P. Armstrong* for appellant.

### APPELLANT'S POINTS.

Where a negotiable instrument is materially altered with-
out the assent of all parties liable thereon, it is avoided as
to those who do not assent thereto, and any alteration which
changes the time of payment is a material alteration. (Laws
Utah 1899, secs. 124, 125.)

The law implies an agreement for extension where in-
terest is paid, as such, in advance, and extends the time of
payment during the period for which interest is so paid.
(Brandt, Surety and Guar., sec. 305; *Walley v. Bank,* 14
Utah 311; *Crashy v. Wyatt,* 10 N. H. 322; *Bank v. Jeffs,* 15

Wash. 235; *Bank v. Colcord,* 15 N. H. 124; *Woodburn v. Carter,* 50 Ind. 376; *Hamilton v. Winterwood,* 43 Ind. 395.)

Any change in the note is an alteration, as by clipping off conditions from the bottom. (*State v. Shatton,* 27 Ia. 420; *Watt v. Pomeroy,* 20 Mich. 425; *Palmer v. Largent,* 5 Nebr. 233, *Krouskop v. Shoutz,* 57 Wis. 204.)

RESPONDENT'S POINTS.

"A surety is liable as much as his principal is liable and absolutely liable as soon as default is made without any demand upon the principal whatsoever, or any notice of default." (2 Daniels, Negotiable Instruments [5 Ed.], sec. 1753; Tiedeman on Commercial Paper, sec. 415; 2 Randolph on Commercial Paper [2 Ed.], 849.)

STRAUP, J.

This is an action brought to recover a judgment on a promissory note. The note reads: "Salt Lake City, Utah, Sept. 13, 1901. Sixty days after date, without grace, for value received, we or either of us promise to pay to the order of Joseph P. Megeath, three hundred dollars ($300) in United States gold coin, negotiable and payable at the bank of Commerce, at Salt Lake City, Utah, without defalcation or discount, with interest at the rate of one per cent. per month from maturity until paid, both before and after judgment, and if suit be instituted for the collection of this note we agree to pay thirty dollars ($30) attorney's fee. Grant H. Smith. J. E. Darmer." The note was indorsed to James Megeath. The suit was brought by his administrator. The defendant Darmer, answering the complaint, alleged that his codefendant, Smith, was the principal debtor; that he (Darmer) received no part of the loan or consideration for which the note was given, and that he signed it only as surety, which facts were known to both Joseph P. and James Megeath when the note was executed; that by a binding agreement Smith, and the holder of the note, extended the time of payment to October, 1902, without his knowl

edge or consent; that no demand was made upon him for
payment until more than four years after the note became
due; and that, by reason of the extension of time and of
the delay in payment, he was prevented from protecting and
securing himself.    The court found the facts substantially
as alleged in the answer, but as conclusions of law found
that the defendant Darmer was a maker and primarily lia-
ble on the note, and therefore rendered judgment against
him.    From this judgment, the defendant Darmer has ap-
pealed.

There is no doubt that under the decisions of this court
prior to the enactment of chapter 83, p. 122, Laws 1899,
relating to negotiable instruments, the facts alleged in the
answer and found by the court constituted a defense, and
discharged Darmer.    It was the law generally in this
country that a binding agreement between the principal and
holder of a negotiable instrument, whereby the time of its
payment was extended, relieved the surety, though he ap-
parently signed as maker, if the holder had knowledge or
notice that he was in fact a surety.    It is, however, con-
tended by the respondent that the law in this respect has
been changed by the act in question.    On the other hand,
the appellant contends that it has not been changed, and
that the law in this regard is now as it was before the en-
actment.    We cannot agree with appellant in this conten-
tion.    The negotiable instruments law enacted in 1899 is
like that of the bills of exchange act of 1882 of England,
and of the negotiable instruments law of New York adopted
in 1897, and of about nineteen other States.

The particular sections pertinent to the question are:

Section 29:   "An accommodation party is one who has signed
the instrument as maker, drawer, acceptor, or endorser, without
receiving value therefor, and for the purpose of lending his name to
some other person.   Such a person is liable on the instrument to
a holder for value, notwithstanding such holder at the time of tak-
ing the instrument knew him to be only an accommodation party."
Section 60:   "The maker of a negotiable instrument by making
it engages that he will pay it according to its tenor."
Section 63:   "A person placing his signature upon an instrument,

otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

*Section* 119: "A negotiable instrument is discharged: I. By payment in due course by or on behalf of the principal debtor. II. By payment in due course by the party accommodated where the instrument is made or accepted for accommodation. III. By the intentional cancellation thereof by the holder. IV. By any other act which will discharge a single (simple) contract for the payment of money. V. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

*Section* 120: "A person secondarily liable on the instrument is discharged: I. By an act which discharges the instrument. II. By the intentional cancellation of his signature by the holder. III. By the discharge of a prior party. IV. By a valid tender of payment made by a prior party. V. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved. VI. By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

*Section* 192: "The person 'primarily' liable on an instrument is a person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable."

By subdivision 6 of section 120 it will be seen that a person secondarily liable on the instrument is discharged by an agreement binding on the holder to extend the time of payment. If, therefore, the appellant was only secondarily and not primarily liable on the instrument, he is discharged. Otherwise not, unless the instrument was discharged. Section 192 makes a person primarily liable on the instrument who by the terms of the instrument is absolutely required to pay it. And by section 29 an accommodation party in fact is liable on the instrument to the holder notwithstanding such holder at the time of the taking of the instrument knew him to be only an accommodation party. Messrs. Eaton and Gilbert, authors of a recent work on Negotiable Paper, in considering the negotiable instruments law in question, say in section 123f:

"The statute only provides for the discharge by an extension of time of a person secondarily liable on the instrument. By the terms of the statute a person is primarily liable who by the terms of the instrument is absolutely required to pay the same. All others are secondarily liable. An accommodation maker or acceptor is absolutely liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party. It would seem to follow that the statute has disposed of the conflict of authority upon this question by holding the accommodation acceptor or maker to his apparent engagement as a principal debtor, and making him liable notwithstanding an indulgence given to the endorser or drawer for whose benefit he became a party to the instrument."

The same question raised here was considered in the case of *Cellers v. Meachem* (Ore.), 89 Pac. 426, 10 L. R. A. (N. S.) 133, and the conclusion was there reached that, under the new law, an accommodation maker was primarily liable, notwithstanding any knowledge the holder of the instrument might have had as to his relationship with the principal. To the same effect are the cases of *Vanderford v. Farmers' & Mechanics' Nat. Bank,* 105 Md. 164, 66 Atl. 47, 10 L. R. A. (N. S.) 129, and *National Citizens' Bank v. Toplitz,* 81 App. Div. 593, 81 N. Y. Supp. 422. These cases are criticized by the appellant. He contends that the provisions of subdivision 4 of section 119, which provide that a negotiable instrument is discharged "by any other act which will discharge a simple contract for the payment of money," was disregarded. He urges that a contract of suretyship is a simple contract, and the making of a binding agreement for an extension of time to the principal debtor has long been held to be an "act" sufficient to discharge the contract of the surety, and hence the facts alleged in the answer and found by the court were clearly a defense which is included in the general language of subdivision 4 of section 119. To reach such a conclusion one must assume that the appellant was not primarily, but secondarily, liable on the instrument —the very thing to be decided—and the law that a person signing a negotiable instrument is not bound by his apparent obligation, but by his obligation in fact, has not been changed. Under the new law the appellant's apparent engagement as

a maker and principal debtor is his real and actual engagement. He signed the note as a maker. By the terms of the instrument, he is absolutely required to pay it. The statute in such case makes him an actual principal and renders him primarily liable, though in fact he received, with the knowledge of the holder, no part of the consideration, and only signed the note for the purpose of lending his name to another. Having signed the note as an apparent maker and principal debtor, he cannot thereafter be heard to assert the contrary so as to affect his liability on the instrument. Section 119 deals, not with the discharge of parties, but with the discharge of the instrument. Of course, if the instrument is discharged, all parties are discharged, whether primarily or secondarily liable. If it was meant that a binding agreement to extend the time of payment should discharge a person, whether primarily or secondarily liable, and is included, as is contended, in the general language of subdivision 4 of section 119, then there was no occasion to insert the provision in section 120 making it a ground of discharge as to a person secondarily liable. Being so inserted strongly indicates that it was the intention to make it a ground to discharge a person only secondarily liable, and not a person primarily liable. While an agreement binding on the holder to extend the time of payment was generally held sufficient to discharge a surety, yet it did not discharge the instrument, nor the principal debtor. It was not such an act as will discharge the instrument itself within the meaning of subdivision 4 of section 119.

Being of the opinion that the appellant is primarily liable on the instrument, and that the facts alleged in the answer and found by the court do not constitute a discharge of the instrument, it follows that the judgment of the court below must be affirmed, with costs. It is so ordered.

McCARTY, C. J., and FRICK, J., concur.