[No. 8327.    Department One.    January 10, 1910.]

BRADLEY ENGINEERING AND MANUFACTURING COMPANY,
*Respondent*, v. E. M. HEYBURN, *Appellant*.[1]

BILLS AND NOTES—ACCOMMODATION MAKERS—STATUTES—CONSTRUC-
TION. The negotiable instruments act was intended to change the
law with reference to the liability of accommodation parties who
signed as joint makers of a promissory note.

SAME—DEFENSES—STATUTES—CONSTRUCTION. Section 58 of the
negotiable instruments act (Laws 1899, p. 351), providing that a
note in the hands of any holder other than a holder in due course
is subject to the same defenses as if it were nonnegotiable, must be
construed in connection with other sections of the act restricting the
defenses, and refers only to such defenses as are permitted by the
act itself, or such as do not deny the tenor of the bill.

BILLS AND NOTES—ACCOMMODATION MAKER—DISCHARGE—EXTEN-
SION OF TIME OF DEBTOR. Under the negotiable instruments act, Laws
1899, p. 346, § 29, defining an accommodation party as one who
signed as maker and who is made liable notwithstanding notice to
a holder for value, and § 60, providing that the maker engages to
pay it according to its tenor, and § 192 defining a person "primarily"
liable as one who is absolutely required to pay, an accommodation
maker of a note is not discharged by an extension of time to the
principal debtor, and therefore cannot show by parol that he signed
only as surety.

SAME—HOLDERS FOR VALUE AND IN DUE COURSE. Under the nego-
tiable instruments act, a holder for value and a holder in due course
are in the same position to challenge any defense based upon a
collateral agreement or upon equities existing between the makers
by holding up the instrument itself.

JUDGMENT—BAR—PARTIES CONCLUDED—JOINT DEBTOR BEYOND JU-
RISDICTION. An unsatisfied judgment in another state against one of
two joint makers of a note does not bar another action on the
note in this state against the other maker who was beyond the
jurisdiction and not a party to the other suit.

MORTGAGES—BILLS AND NOTES—SECURITY—APPLICATION. Under
the negotiable instruments act, a holder for value of notes secured
by mortgage can apply the proceeds of foreclosure to the payment
of any one or all of the notes without observing the equities exist-
ing between joint makers who were all primarily liable thereon.

[1]Reported in 106 Pac. 170.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered January 7, 1909, upon findings in favor of the plaintiff, in an action upon a promissory note. Affirmed.

*Caleb Jones*, for appellant.

*B. B. Adams*, for respondent.

CHADWICK, J.—The respondent brought this action to recover upon two promissory notes, executed by the Shaughnessy Hill Lead-Silver Mining Company, a corporation, E. M. Heyburn, and E. R. Ward. The complaint is the ordinary complaint upon a promissory note, in the usual form. The corporation was not served and did not appear in the action. E. R. Ward made default. E. M. Heyburn appeared, and without denying the notes, alleged that they were given in payment for certain mining machinery sold by the plaintiff to the defendant corporation, in which he had no interest other than as a stockholder therein; that while he signed the notes in the apparent capacity of a joint maker, he was in fact an accommodation maker and surety thereon, and received none of the benefits thereof, which facts were well known to the plaintiff, and that the plaintiff thereafter, without defendant's knowledge or consent and for a valuable consideration, extended the time of payment of the notes. The answer as a further defense alleged payment of the notes. Plaintiff's demurrer was sustained to the plea of release. The case was tried upon the issue raised by the plea of payment. The court found against the defendant upon that issue, and entered a judgment as prayed for in the complaint. The defendant E. M. Heyburn appeals.

Appellant argues that the court erred in sustaining the demurrer to the answer, for the reason that he was an accommodation maker, which fact may be shown by parol; that he was bound only as a surety, and that the extension of time to the principal released appellant as such surety. *Baldwin v. Daly*, 41 Wash. 416, 83 Pac. 724, and *Spencer v. Alki Point*

*Transportation Co.*, 53 Wash. 77, 101 Pac. 509, are relied upon to sustain this contention. The latter case is not in point; for, aside from the fact that it appeared that the indorser was a surety in fact and entitled to the protection afforded sureties, it is settled by an almost unbroken line of authority that a corporation may plead *ultra vires* as a defense to a contract of suretyship, when sued by one who has knowledge of the original relation of the parties. Ogden, Negotiable Instruments, § 124. Aside from this consideration, it is generally held that §§ 29 and 64 of the negotiable instruments law (Laws 1899, p. 351, ch. 149) are inapplicable to corporations. Crawford, Annotated Negotiable Instruments Law (3d ed.), p. 46, and cases there cited.

In *Baldwin v. Daly*, the court said:

"The ruling of the trial court, to the effect that it is incompetent for one of two or more makers of a joint and several promissory note to show by parol that he is in fact only a surety, and that he was known to be such by the payee named in the note when the note was taken, is contrary to the ruling of this court in *Culbertson v. Wilcox*, 11 Wash. 522, 39 Pac. 954, and *Bank of British Columbia v. Jeffs*, 15 Wash. 230, 46 Pac. 247."

The cases upon which that statement was based were decided before the passage of the negotiable instruments act, which clearly and intentionally changed the law in that respect (Laws 1899, p. 351, ch. 149). Aside from this, it appears upon the face of the decision that such statement of the rule was dictum, for the opinion states: "It is apparent, however, that this question is not a material one here, unless it is to be held that the appellant Peter was entitled to show that the respondent had released him from liability on the note." And it was then held that a release by parol could not be shown.

But these cases must henceforth be resolved independently of all decisions based upon the law merchant, notwithstanding the contention of appellant that the negotiable instruments act in no way affects the rights or changes the relation of the

original parties to the contract.   To sustain his theory that
it does not do so, appellant cites section 58 of the law:  "In
the hands of any holder other than a holder in due course, a
negotiable instrument is subject to the same defenses as if it
were non-negotiable  .  .  ."   Laws 1899, chap. 149, p.
351, § 58.   If this section stood alone, there is reason for
appellant's contention; but it is a primary rule of construc-
tion that one section of a statute must be considered with
reference to others, so that the legislative intent may not be
defeated.   Looking, then, to the whole law and not to the
particular section, we find that it is also declared:

"Sec. 29.   An accommodation party is one who has signed
the instrument as maker, drawer, acceptor or indorser, with-
out receiving value therefor, and for the purpose of lending
his name to some other person.   Such a person is liable on
the instrument to a holder for value, notwithstanding such
holder at the time of taking the instrument knew him to be
only an accommodation party."

"Sec. 60.   The maker of a negotiable instrument by making
it engages that he will pay it according to its tenor, and
admits the existence of the payee and his then capacity to
endorse."

When construed in the light of these sections, section 58
cannot be made to bear the construction put upon it by ap-
pellant.   The law further provides:

"Sec. 26.   Where value has at any time been given for the
instrument, the holder is deemed a holder for value in respect
to all parties who became such prior to that time."

"Sec. 52.   A holder in due course is a holder who has taken
the instrument under the following conditions:  .  .  .

"(3)   That he took it in good faith and for value;  .  .  ."

"Sec. 59.   Every holder is deemed *prima facie* to be a
holder in due course;  .  .  ."

When we consider that it was the object of the negotiable
instruments act to make such instrument certain and to speak
the true contract of the parties, thus saving the commercial
world the hazard of trumped up defenses or the peril of try-
ing out collateral issues such as suretyship, etc., in case of

suit, it would seem that we cannot reject the other sections and give effect only to section 58.

Our conclusion is further fortified by section 192: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay same. All other persons are 'secondarily' liable." This section not only fixes an absolute liability on the one who, by the terms of the instrument, binds himself without qualification, but furnishes a rule of evidence as well. Nor do we think that this construction renders section 58 meaningless. The defenses there referred to must be held to be only such defenses as are permitted by the act itself, or such equities as do not deny the tenor of the bill.

Appellant admits that, if respondent was a holder in due course, he could not plead his present defense. We find no case in which this exact question was presented, but in the case of *Hermann's Extrs. v. Gregory* (Ky.), 115 S. W. 809, it was held, in construing § 26, no particular reference being made to § 52, which might well have been done as it seems to us, that one who had taken the note of another and had paid another note owing by the maker to a bank, was a holder for value, and a defense of no consideration could not be set up. A holder for value, therefore, and a holder in due course are in the same position to challenge any defense based upon a collateral agreement or upon equities existing between the makers by holding up the instrument itself. This construction harmonizes the several provisions of the law, and makes effectual the purpose of the law to make negotiable instruments in fact what they have been only in theory under the law merchant, a certain medium of commercial exchange. Our conclusion also harmonizes with the several decisions of this court which are collected in *Anderson v. Mitchell*, 51 Wash. 265, 98 Pac. 751, wherein we held, without reference to the negotiable instruments act, that one who signed as maker was bound by the terms of his obligation. Being primarily liable as an accommodation maker, appellant was not

discharged by an extension of time to the principal debtor. Eaton & Gilbert, Commercial Paper, § 123f; *Vanderford v. Farmers & Mechanics Nat. Bank*, 106 Md. 69, 66 Atl. 47, 10 L. R. A. (N. S.) 129, and note; *Wolstenholme v. Smith*, 34 Utah 300, 97 Pac. 329; *Cellers v. Meachem*, 49 Ore. 186, 89 Pac. 426, 10 L. R. A. (N. S.) 133.

On the trial it appeared that a chattel mortgage had been given to secure the payment of the notes made by appellant, as well as another note made by the corporation after his active participation in its affairs had ceased. After these several notes became due, an action was brought in the state of Montana where the property was then situate to foreclose the chattel mortgage. Appellant was a nonresident of Montana, and did not appear in that action. A foreclosure and sale resulted in a partial satisfaction of the judgment, the note of the corporation being paid off, and a slight sum being credited upon the obligations made by appellant.

It is urged that the notes sued on became merged in the judgment and that an independent action cannot now be maintained. The fact that the appellant was a nonresident and made no appearance in that action takes this case without the rule relied upon by the appellant.

"An unsatisfied judgment against one of two joint debtors does not bar a subsequent action upon the original claim against the other, where the latter, at the time the first suit was brought, was without the jurisdiction of the state and beyond the reach of legal service." 23 Cyc. 1209.

See, also, 24 Am. & Eng. Ency. Law (2d ed.), 760, 761; 2 Black, Judgments (1st ed.), § 771.

Appellant also argues that he was released by reason of the fact that he was deprived of the benefit of the security which was given by the maker at the time or after the notes were made. It was the recollection of appellant that a bill of sale was executed at the time the first notes were made and delivered. A careful reading of the testimony convinces us that the recollection of appellant in this regard is not borne

out. It was not pleaded in his answer. The court made no finding that any instrument in the way of security other than the chattel mortgage was given, nor did appellant request any such finding. If it were true that a bill of sale had been given, it might be that appellant could claim credit for the reasonable value of the property as against a subsequent chattel mortgage. But there is no testimony to warrant us in holding that a bill of sale was in fact ever given. Whatever the hardship of the rule may be generally, and particularly as applied to this case, respondent was not bound to observe any equities existing between the Shaughnessy Hill Company and appellant, but might apply the proceeds of the sale under the foreclosure to the payment of any one or all of the notes as it saw fit. *Smythe v. New England Loan & Trust Co.*, 12 Wash. 424, 41 Pac. 184.

There is no error in the record and the judgment must be affirmed.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., concur.