## OKLAHOMA STATE BANK OF SAYRE v. SEATON et al.

No. 6210—Opinion Filed Jan. 22, 1918.

(170 Pac. 477.)

**Bills and Notes—Extension of Time—Release of Accommodation Makers—Negotiable Instruments Act.**

Under the Negotiable Instruments Act of this state an extension of time granted the principal debtor by agreement between him and the holder of a negotiable instrument without the knowledge or consent of the accommodation makers does not release them from liability on said note, and this is true even though the note is in the hands of the original payee and has never been assigned "in due course."

(Syllabus by Hooker, C.)

Error from District Court, Beckham County; G. A. Brown, Judge.

Action by the Oklahoma State Bank of Sayre against James T. Seaton and others. Judgment for defendants, and plaintiff brings error. Reversed, and remanded for new trial.

T. Reginald Wise, for plaintiff in error.

D. W. Tracy, for defendants in error.

Opinion by HOOKER, C. The bank seeks to recover a judgment against James T.

Seaton and three others upon a promissory note. The execution and delivery of said note was admitted, but it is asserted by the other parties that they signed the same as the sureties of said Seaton, and that they received no part of the money, but had signed the note merely to aid Seaton in procuring the money from the bank, all of which the bank knew at the time the note was executed. This note was negotiable in form, and by its terms each signer was made an agent for the others to extend the time of payment. The other parties signing said note with Seaton claim that they are released from liability thereon because the bank, for a consideration under a contract with Seaton alone, had extended the time of payment without their consent or knowledge. This view was sustained by the lower court, and judgment was rendered for said parties, and thereupon the bank appealed here.

It is asserted by the bank that this note is a negotiable instrument, and that the several extensions of the time of payment, etc., did not release said parties from liability upon said note, and it is further claimed that the president of the bank had no authority to make any contract with Seaton which would release the other makers or signers of said note. The evidence establishes that the president of the bank knew that Seaton alone was to receive and did receive the money from it for which said note was executed, and that the other parties had signed the same in order that the bank might let him have the money, and it is further shown that when the note became due at several times the president of the bank made an agreement each time to extend the time of payment for a consideration paid by Seaton at each time, all of which was done without the consent or knowledge of the cosigners with Seaton. Were these parties released by virtue of these acts? That is the main question in this case. Said note is as follows:

"$525.          Sayre, Okla., Feb. 16, 1911.

"Aug. 1st after date, for value received, I, we, or either of us promise to pay to the order of Oklahoma State Bank, Sayre, Oklahoma, five hundred twenty-five no/100 dollars with interest at 10 per cent. per annum from maturity until paid.

"The makers and indorsers of this note hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest, and all exemptions that may be allowed by law, and valuation and appraisement laws waived, and each signer makes the other an agent to extend the time of this note. If this note should be placed in the hands of an attorney, we, or

either of us, agree to pay $50.00 attorney's fees and all other costs of collection. Payable at Oklahoma State Bank, Sayre, Oklahoma.

"P. O., Sayre.          James T. Seaton.
                        "J. M. Danner.
                        "T. J. Price.
                        "E. E. Klein.
"Loan No. (122).        E. L. Martin."

Indorsed on the back of note:

Interest paid to Nov. 1st, 1911.
Interest paid to Feby. 1st, 1912.
"         "     Mar. 1st,  "
"         "     May 1,     "
Mar. 30, 1912, Cr. $50.00.

The following sections of Revised Laws 1910 should be considered here:

"Sec. 4079. An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor. and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

"Sec. 4110. The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to endorse."

"Sec. 4169. A negotiable instrument is discharged:

"First. By payment in due course by or on behalf of the principal debtor;

"Second. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"Third. By the intentional cancellation thereof by the holder:

"Fourth. By any other act which will discharge a simple contract for the payment of money:

"Fifth. When the principal debtor becomes the holder of the instrument at or after maturity in his own right.

"Sec. 4170. A person secondarily liable on the instrument is discharged:

"First. By an act which discharges the instrument;

"Second. By the intentional cancellation of his signature by the holder;

"Third. By the discharge of a prior party;

"Fourth. By a valid tender of payment made by a prior party;

"Fifth. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily. liable is expressly reserved;

"Sixth. By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument unless the right of recourse against such party is expressly reserved."

Measuring the liability of said defendants in error by the provisions of the statutes above quoted, we reach the conclusion that Danner, Price, Klein, and Martin were accommodation makers, and as such primarily liable on said note. That being true, how could they be released from liability? Could they be discharged in any other way than Seaton could be?

Under the Negotiable Instruments Act all parties primarily liable may be discharged in the manner and form set forth in the act, and in no other way. The act eliminates the relationship of principal and surety between the makers, all being primarily liable, and expressly provides the exclusive method and how the liability of those thus primarily liable may be discharged.

It is urged by said defendants in error that the note sued upon should not be construed by the Negotiable Instruments Act for the same has not been assigned, and this action was not brought by a "holder in due course," and that under section 4108, Revised Laws 1910, as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter"

—they are entitled to the same defenses as if said note was not negotiable in form. and, that being so, their defense is good and should be sustained.

Eliminating the negotiable instrument features, their defense is sufficient to bar recovery. Adams v. Ferguson, 44 Okla. 544. 147 Pac. 772.

Further reference was made by them to sections 1043, 1051, and 1056, Revised Laws 1910, which are as follows:

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

"One who appears to be a principal, whether by the terms of a written instrument or otherwise, may show that he is in fact a surety, except as against persons who have acted on the faith of his apparent character of principal."

"A surety is exonerated:

"First. In like manner with a guarantor.

"Second. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or,

"Third. To the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do."

And we are asked to hold that the Negotiable Instruments Act was passed to establish a uniform system of law to govern negotiable instruments only when they are negotiated and are in the hands of "holders in due course," and in this manner to produce harmony between sections 4108 and 1051, Revised Laws 1910, and other provisions of the statute with the Negotiable Instruments Act.

There is some authority supporting the views entertained by the defendants in error (Fullerton Lbr. Co. v. Snouffer et al., 139 Iowa, 176, 117 N. W. 50), but the great weight thereof justifies the position that the Negotiable Instruments Act was passed by the legislative body of the state for the sole purpose of establishing a uniform system of law applicable to commercial paper, and that law as expressed in said act is the supreme and exclusive expression of said body, and that all laws in existence at the time same was enacted are superseded thereby.

In R. C. L. vol. 3, p. 1276, it is said:

"Under the Negotiable Instruments Law it may be regarded as well settled that the accommodation maker or acceptor is primarily liable, and is not discharged by any extension of time given to the indorser, drawer or comaker, for whose benefit he became a party to the instrument, without regard to whether the party suing on the instrument is a party thereto as a payee, and had knowledge of the relation subsisting between the accommodation maker and the principal debtor."

The Supreme Court of Ohio, in Richards v. Market Ex. Bank Co., 81 Ohio St. 348, 90 N. E. 1000, 26 L. R. A. (N. S.) 99, held:

"(1) One who signs a promissory note on the face thereof, and, who in that way becomes a surety for the principal maker, is, by force of section 3178a, Revised Statutes, primarily liable for the payment of such note.

"(2) Section 3175j, Revised Statutes, relating to the discharge of negotiable instruments, provides in what manner and for what causes such instruments may be discharged, and, by force of the rule. 'Expressio unius est exclusio alterius,' sureties upon such instruments who are primarily liable thereon cannot be otherwise relieved from responsibility for their payment.

"(3) The rule of the common law that any agreement between the holder of a promissory note and the principal which varies essentially the terms of the contract by which a surety is bound without the consent of such surety will work his release from liability is no longer in force as to one who has signed on the face of the instrument; such rule having been in effect abrogated by section 3175j, Revised Statutes.

"(4) Sections 3175o and 3175p, Revised Statutes, relating to the alteration of instruments, apply to the physical alteration of the instrument itself, but do not apply to a contract between the holder and the principal maker for an extension of time of payment of the instrument."

In Vanderford v. B. & M. Nat. Bank, 105 Md. 164, 66 Atl. 47, 10 L. R. A. (N. S.) 129, it is held:

"(1) A signer of a joint and several promissory note is not, although known by the payee to be a surety, discharged under the Negotiable Instruments Law, by granting an extension of time to the principal debtor."

And in Cellers v. Meachem, 49 Or. 186, 89 Pac. 426, 10 L. R. A. (N. S.) 133, 13 Ann. Cas. 997, it is held:

"A maker of a note who appends to his name the word 'surety,' and is as between himself and his comaker a surety only to the knowledge of the payee, is primarily liable, and, under the Negotiable Instruments Law, his liability is not discharged by the extension of time to the principal obligor."

In Union Trust Co. v. McGinty, 212 Mass. 205, 98 N. E. 679, Ann. Cas. 1913C, 525, it is held:

"The Negotiable Instruments Act (Rev. Laws Mass. c. 73, §§ 18-212), having been adopted for the purpose of securing uniformity and certainty in the law throughout the country, should be so construed as to give effect to this design, words being given their natural and ordinary meaning and the obvious meaning of the act being adhered to as closely as possible without reference to the law as previously existing, unless necessary to dissolve obscurity or doubt, especially in instances where there

was a difference in the law of the different states prior to such act.

"Under the Negotiable Instruments Act (Rev. Laws Mass. c. 73, § 77), providing that the maker of a negotiable instrument engages that he will pay it according to its tenor, section 208, providing that the person primarily liable on an instrument is the one who is required to pay it absolutely, and section 46, providing that an accommodation party is liable to a holder for value, although the holder, when he took the instrument, knew him to be an accommodation party, the accommodation maker of a note is primarily liable.

"Under the Negotiable Instruments Act (Rev. Laws Mass. c. 73, § 136), specifying the ways in which a negotiable instrument is discharged, and making no reference to discharge by an extension of time of payment, and section 137, expressly providing that parties secondarily liable are discharged by an extension of the time of payment without their consent, a person making a note for the accommodation of the payee is not discharged by an agreement between the holder and the payee without his consent extending the time of payment."

And in Ann. Cas. 1913C, 527, it is said:

"Under the law merchant it was generally held that a binding agreement between the principal debtor and the holder of a negotiable instrument, whereby the time of its payment was extended without the assent of an accommodation party, relieved the latter from all liability thereafter upon the instrument. 1 Am. & Eng. of Law (2d Ed.) 375, 378. The Negotiable Instruments Law provides that an accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person, and that such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knows him to be only an accommodation party. The person primarily liable on an instrument is defined to be the person who by the terms of the instrument is absolutely required to pay the same while all other parties are secondarily liable. In providing for the discharge of those primarily liable on a negotiable instrument the act designates five different ways whereby such discharge can be effected, not one of which embraces an extension of the time of payment, although it is expressly provided that those secondarily liable may be discharged by any agreement binding on the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the person secondarily liable, or unless the right of recourse against such party is expressly reserved.

"Accommodation Maker.

"Under the Negotiable Instruments Law it may be regarded as well settled that the accommodation maker or acceptor is primarily liable, and is not discharged by any extension of time given to the indorser, drawer, or comaker, for whose benefit he became a party to the instrument, without regard to whether the party suing on the instrument is a party thereto as a payee, and had knowledge of the relation subsisting between the accommodation maker and the principal debtor. Vanderford v. Farmers', etc., Nat. Bank, 105 Md. 164, 66 Atl. 47, 10 L. R. A. (N. S.) 129; National Citizens' Bank v. Toplitz, 81 App. Div. 593, 81 N. Y. S. 422, affirmed 178 N. Y. 464, 71 N. E. 1; Richards v. Market Exch. Bank Co., 81 Ohio St. 348, 90 N. E. 1000, 26 L. R. A. (N. S.) 99; Cellers v. Meachem, 49 Or. 186, 13 Ann. Cas. 997, 89 Pac. 426, 10 L. R. A. (N. S.) 133; Murphy v. Panter [62 Or. 522] 125 Pac. 292; Wolstenholme v. Smith, 34 Utah, 300, 97 Pac. 329; Bradley, Engineering, etc., Co. v. Heyburn, 56 Wash. 628, 106 Pac. 170, 134 Am. St. Rep. 1127. See, also, Hunter v. Harris, [63 Or. 505] 127 Pac. 786, and the reported case. And see Fritts v. Kirchdorfer, 136 Ky. 643, 650, 124 S. W. 882, Rouse v. Wooten, 140 N. C. 557, 6 Ann. Cas. 280, 53 S. E. 430, 111 Am. St. Rep. 875, 876, and Lumbermen's Nat. Bank v. Campbell, 61 Or. 123, 121 Pac. 427, in which cases, while the question of a discharge by an extension of time was not directly raised, what constitutes a primary liability under the negotiable instruments law was considered. * * *

"In Richards v. Market Exch. Bank Co., 81 Ohio St. 348, 90 N. E. 1000, 26 L. R. A. (N. S.) 99, it appeared that the defendant sought to escape liability on the ground that he was only surety for his comaker, which fact was known to the plaintiff, and that by an extension of time granted to the principal debtor he was released. In denying validity to this contention the court, referring to the provisions in the Negotiable Instruments Law for discharge, said: 'Where it is declared, as it is here declared, that a party to such an instrument, who is absolutely required to pay the same, is primarily liable and can be discharged from liability in certain specified ways and for certain specified causes, the reasonable conclusion is that the purpose was to enact that such party cannot be so discharged in any other way or for any other causes. * * * The act does not purport to embody all the law relating to sureties; indeed, the word "surety" does not appear in the text of the act at all, but such parties whose names appear on the face of the instrument are sufficiently described by the classification of those "primarily liable." The act further prescribes that an accommodation party may be maker without himself receiving value; that he engages that he will pay the instrument according to its tenor, and may be held liable to the holder, though that

party knew him to be only an accommodation maker, thus classing him as one primarily liable, and in a subsequent section the act further purports to embody all the law as to release of parties "primarily liable" on negotiable instruments by providing for the discharge of the instrument itself. It defines how such parties may be released in five designated ways, none of them embracing the extension of time for payment by the holder, and then follow in the succeeding section the grounds upon which parties secondarily liable may be discharged, and as to them such discharge will follow any valid agreement of the holder to extend payment, etc., without the consent of the person so secondarily liable. The subject of discharge on the ground of a contract of extension of payment by the holder being thus present in the legislative mind, the natural inference would be that, while declaring a purpose on that subject, the entire purpose would be expressed. Nor does the provision of the fourth paragraph of section 3175j, to the effect that the instrument may be discharged "by any other act which will discharge a simple contract for the payment of money," affect the present issue. As before stated, if the instrument itself is discharged, all parties are discharged. If it had been intended that a binding agreement to extend the time of payment should discharge a party, whether primarily or secondarily liable, * * * there could be no conceivable reason for the provision in the next section making it a ground of discharge of one secondarily liable. As result from all these considerations we are unable to see how, taking the two sections together, there can be doubt that it was the purpose to enact that as to those primarily liable on the contract no release from liability will follow an extension of time of payment. "Expressio unius est exclusio alterius." '

"Under a similar state of facts the same principle of statutory construction was applied in interpreting the provisions of the new act in Vanderford v. Farmers', etc., Nat. Bank, 105 Md. 164, 66 Atl. 47, 10 L. R. A. (N. S.) 129, wherein the court said: 'When the Legislature has declared, as it has done in these sections, that a negotiable instrument signed by a party who is primarily liable thereon, as that liability is defined by the act, may be discharged in one of five specified methods, it would seem plain that it meant that the particular method prescribed for the accomplishment of that result should exclude a discharge by any other or different method, upon the familiar maxim that the express mention of one thing implies the exclusion of another.' In National Citizens' Bank v. Toplitz, 81 App. Div. 593, 81 N. Y. S. 422, affirmed 178 N. Y. 464, 71 N. E. 1, it appeared that an extension of time was given to the payee without the consent of the accommodation maker. The lower court, in holding that this did not constitute a defense to a suit

brought against the accommodation maker on the note, said: 'Concededly this was an accommodation note; it was given with the intention that the indorser should raise money on it, on the liability of the maker, and the maker is liable primarily notwithstanding the knowledge of the holder that she was an accommodation maker only. Neg. Inst. Law (Laws of 1897, c 612) § 55, as amended by Laws of 1898, c. 336. This note was discounted on the credit of the maker, whose very purpose was to become absolutely liable. Thus she became primarily liable. There is no relation of surety. By section 3 of the Negotiable Instruments Law, the person primarily liable is the one who by the terms of the instrument is absolutely required to pay the same, and all other persons are secondarily liable. No other question of liability can arise in this case than such as appears upon the face of the instrument.' On the case coming before the Court of Appeals for final determination, that court, while affirming the judgment on the ground that the alleged extension of time was not shown to have been based on a valid consideration, expressly declined to pass on the question raised under the Negotiable Instruments Act.

"In Cellers v. Meachem, 49 Or. 186, 13 Ann. Cas. 997, 89 Pac. 426, 10 L. R. A. (N. S.) 133, it appeared that a joint accommodation maker had added to his signature on the face of the joint promissory note the word 'Surety.' The court, in holding that under the Negotiable Instruments Law he was not discharged by an extension of time to his comaker, said: 'The word "Surety" appended to the name of the maker of a note cannot alter his liability as to the owner thereof, and only shows that, as between the promisors, one is a principal and the other a guarantor. Bowen v. Clark, 25 Or. 592, 37 Pac. 74; Hoffman v. Habighorst, 38 Or. 261, 53 L. R. A. 908, 63 Pac. 610; Galloway v. Bartholmew, 44 Or. 75, 74 Pac. 467. Since the word "surety" can only affect the status of the makers of the note as between themselves, and as Lyon's liability to the plaintiffs is the same as if he had signed the instrument without using the qualifying word after his name, he became, in the language of the Negotiable Instruments Act, "absolutely required to pay the same," and is therefore primarily liable. B. & C. Comp. § 4592; Hughes v. Ladd, 42 Or. 123, 69 Pac. 548; Galloway v. Bartholmew, 44 Or. 75, 74 Pac. 467; National Citizens' Bank v. Toplitz. 178 N. Y. 469, 71 N. E. 1; Id., 81 App. Div. 593, 81 N. Y. S. 422.'

"In Wolstenholme v. Smith, 34 Utah, 300, 97 Pac. 329, the defendant, being sued on a joint promissory note, in his answer stated that his codefendant was the principal debtor; that he (the defendant) received no part of the loan or consideration for which the note was given, and that he signed the note only as surety, all of which facts were known to the plaintiff; that by a binding

agreement the plaintiff and the defendant's comaker extended the time of payment without his knowledge or consent; that no demand was made on him for payment until more than four years after the note became due; and that, by reason of the extension of time and of the delay in payment, he was prevented from protecting and securing himself. The court, admitting the facts to be as alleged in the answer, found as conclusions of law that the defendant was a maker, and therefore, under the Negotiable Instruments Law, primarily liable. The court said: 'Under the new law the appellant's apparent engagement as a maker and principal debtor is his real and actual engagement. He signed the note as a maker. By the terms of the instrument he is absolutely required to pay it. The statute in such case makes him an actual principal and renders him primarily liable, though in fact he received, with knowledge of the holder, no part of the consideration, and only signed the note for the purpose of lending his name to another. Having signed the note as an apparent maker and principal debtor, he cannot thereafter be heard to assert the contrary so as to affect his liability on the instrument.' In Bradley Engineering, etc., Co. v. Heyburn, 56 Wash. 628, 106 Pac. 170, 134 Am. St. Rep. 1127, the court, under a state of facts similar to those of Wolstenholme v. Smith, supra, made a similar ruling, declaring that, being primarily liable, an accommodation maker was not discharged by an extension of time to the principal debtor, and that, independently of all decisions based on the law merchant, the Negotiable Instruments Act clearly and intentionally changed the law with respect to the point under discussion. Referring to the contention of the accommodation joint maker that the plaintiff, as payee, was not a holder in due course, the court said: 'Appellant admits, that if respondent (payee), was a holder in due course, he could not plead his present defense. We find no case in which this exact question was presented, but in the case of Herman v. Gregory, 131 Ky. 819, 115 S. W. 809. it was held, in construing section 26, no particular reference being made to section 52, which might well have been done, as it seems to us, that one who had taken the note of another and had paid another note owing by the maker to a bank was a holder for value, and a defense of no consideration could not be set up. A holder for value, therefore, and a holder in due course are in the same position to challenge any defense based upon a collateral agreement or upon equities existing between the makers by holding up the instrument itself. This construction harmonizes the several provisions of the law, and makes effectual the purpose of the law to make negotiable instruments in fact what they have been only in theory under the law merchant, a certain medium of commercial exchange."

The judgment of the lower court is reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.