## BANK v. MATSON.

(*Knoxville.*    September    22,    1897.)

1. PRINCIPAL AND SURETY. *Release of surety.*

A surety is released from liability by the creditor's agreement
with the principal debtor, made without the surety's consent,
and upon a valid consideration, to extend the time of payment
for a fixed and definite period.   (*Post, p. 394.*)

Cases cited and approved: Johnson v. Hacker, 8 Heis., 388; Ap-
person v. Cross, 5 Heis., 481; Hill v. Bostick, 10 Yer., 415; Lea v.
Dozier, 10 Hum., 447; Peay v. Poston, 10 Yer., 111.

2. SAME. *Same.*

But an extension of time to the principal debtor, for the payment
of the indebtedness, to operate as a release of the surety, must
be in pursuance of an actual, valid agreement for delay, either
express or implied, for a definite or fixed time, and the mere
taking of collateral or additional security, without extending
the time of payment, will not release the surety, nor will the
mere delay to collect the debt have that effect, in the absence
of a valid agreement.   (*Post, p. 394.*)

Cases cited and approved: Wilson v. Langford, 5 Hum., 320; Pen-
dexter v. Vernon, 9 Hum., 89; Miller v. Knight, 6 Bax., 503;
Miller v. Knight, 7 Bax., 127.

3 SAME. *Same.*

No binding agreement which will release a surety on a note is
necessarily implied from a trust deed, given by the principal
debtor, after the note became due, conditioned that it shall be
void if the note and other indebtedness is paid within six months
from date, but further providing, that, if default is made in the
payment of the amount secured, or any part thereof, or the
interest thereon, on or before the end of the six months, the

property may be sold, and the proceeds applied to the indebtedness. (*Post, pp. 393–397.*)

---

FROM WASHINGTON.

---

Appeal from Chancery Court of Washington County. JOHN P. SMITH, Ch.

ISAAC HARR for Complainant.

CARR & REEVES for Defendants.

WILKES, J. The bill in this case is filed, among other things, to collect a note for $1,000 upon which defendant, A. R. Johnson, was surety for defendant, Matson. Johnson defended the action upon the ground that the bank had extended time of payment to the defendant, Matson, without his consent and to his prejudice, and thus released him from liability. The Special Chancellor in the Court below sustained the defense of Johnson, and decreed that he was released by the act of the bank. Other steps were taken in the case not necessary now to mention. The bank appealed from so much of the Chancellor's decree as released Johnson.

The cause has been heard by the Court of Chancery Appeals and that Court affirmed the decree of the Chancellor and the bank has appealed to this Court.

It appears from the findings of the Court of Chancery Appeals that Matson, as principal, and Johnson, as surety, executed their note for $1,000 to the bank on March 17, 1891. On February 20, 1892, Matson, the principal, executed a deed of trust to Newton Hacker, trustee, to secure the bank in the payment of this note as well as others, aggregating something over $5,000. The conveyance embraced real estate in Washington County and all of Matson's interest in the Johnson City Real Estate Company, which was all the property owned by the principal debtor in Tennessee, subject to execution. When the trust was made, the debtor, Matson, was solvent, and the property sufficient to satisfy his debts, but at the expiration of the six months' time granted by the trust, Matson had become insolvent, and the shrinkage in the value of the property rendered it insufficient to satisfy the debts provided for.

The Court of Chancery Appeals find from the proof that there was no express extension of time granted, other than appears in and is to be implied from the taking of the deed of trust and its terms and the circumstances surrounding the parties. It also found that Johnson was the surety upon the debt and this fact was known to the bank, and that the trust deed was taken on Matson's property by the bank, without the knowledge or consent of Johnson, the surety.

The Court of Chancery Appeals find that from

the terms of the trust deed, there was a necessary and unavoidable implication that time was extended to Matson by the bank for six months, and this, together with the fact that all his property was covered up by the trust deed and put beyond the reach of creditors, was an act of bad faith on the part of the creditor bank to the surety debtor, which operated to release him, and it was so adjudged.

That portion of the trust deed bearing upon the question of extension of time, is in the following words:

"Now, therefore, if the said Thomas E. Matson shall pay to the said bank the full amount of the indebtedness above mentioned, with interest thereon, within six months from this date, then these presents, and the estate hereby conveyed, shall cease and be void, but if default shall be made in the payment of the sum of money above mentioned, or any part thereof or the interest thereon, on or before the end of the six months, then said party of the second part, after giving notice of the time and place of sale by written or printed notice, etc., at the end of thirty days' notice, shall proceed to sell the property at public auction, for cash, and in bar of all right and equity of redemption, which is waived and surrendered, and apply the proceeds, first, to the cost and expenses of sale, then to the indebtedness above mentioned and interest, and the surplus, if any, to the said Matson."

As before stated, the note now in controversy was provided for along with other notes in this deed of trust.

The question that presents itself for our consideration is whether the terms of this instrument granted an extension of time of payment to the principal, Matson, in such a sense as to release the surety, Johnson.

It is well settled that if the creditors grant an extension of time of payment upon a valid consideration, for a definite and fixed period, to the principal debtor, the prejudice of the surety and without his consent, it will operate to release the surety from his liability. 2 Daniel on Negotiable Insts., Sec. 1328; *Johnson* v. *Hacker*, 8 Heis., 388; *Apperson* v. *Cross*, 5 Heis., 481; *Hill* v. *Bostick*, 10 Yer., 415; *Lea* v. *Dozier*, 10 Hum., 447; *Peay* v. *Poston*, 10 Yer., 111.

It is equally well settled that there must be an actual valid agreement for delay, either express or necessarily implied, for a definite or fixed time, to work this effect, and that the mere taking of collateral or additional security, without extending the time of payment, will not · release the surety, nor will the mere delay to collect the debt have that effect, in the absence of a valid agreement. Story's Eq. Jur., 326; *Wilson* v. *Langford*, 5 Hum., 320; 2 Daniel on Neg. Inst., Sec. 1328; *Pendexter* v. *Vernon*, 9 Hum., 89; *Miller* v. *Knight*, 6 Bax., 503; 7 Bax., 127.

The Court of Chancery Appeals found that the language used in this deed of trust necessarily implied that delay would be granted in the enforcement of the debt and sale of the property, though the parol testimony was to the effect that no such delay was granted or intended.

In this construction of the language of the deed of trust we are unable to agree with the Court of Chancery Appeals. The language, as before quoted, is, "If said Matson shall pay to the bank the full amount of the indebtedness above mentioned, with the interest thereon, within six months from this date, then these presents and the estate hereby conveyed shall cease and be void." Evidently, this language, taken alone, would imply an intention to give the debtor six months in which to pay the debt and interest. The trust deed, however, continues: "But if default shall be made in payment of the sum of money above mentioned, or any part thereof, or the interest thereon, on or before the end of said six months," then a sale should be had of the property conveyed.

When the trust deed was executed, the note of Matson, with Johnson surety, was already overdue and in default, and it so continued during the whole of the six months, and we are unable to see, looking at the terms of the trust deed, why the bank might not, immediately on the execution of the trust deed, sue upon the note and proceed to execute the trust, and why it might not have been executed on

any day thereafter during the six months. The language used admits of no other construction. The note on which Johnson was surety was executed March 17, 1891, and due at ninety days, while the deed of trust was executed February 22, 1892, and the note was therefore overdue and in default when the trust was made, and so continued, and was not changed or renewed to run for six months with the trust deed.

Upon examination of the deed of trust we do not find any one of the numerous debts provided for in it whose date of maturity was postponed for six months from the time the trust was executed, but they were each and all, with one exception, overdue and in default at that time. So that the bank did not place itself in such condition that it could not proceed to sue or to sell the property conveyed until after six months from the date of the trust deed, but, on the contrary, could proceed at once. There is, therefore, no valid agreement for delay to be necessarily implied from the terms of the trust deed. The most that can be said is that the bank took a deed of trust upon all the principal debtor's property, and forebore to enforce it. It was, therefore, merely a delay to collect the debt, but not because of any valid agreement to do so. It is apparent that Johnson might have required the bank to foreclose at the time the trust deed was made, or soon thereafter, and could have realized the debt and saved

the surety, and the surety was not, therefore, prejudiced in his remedy by the act of the principal.

We are of opinion there is error in the decree of the Court of Chancery Appeals, and it is reversed, and judgment will be rendered in favor of the bank against Johnson for the amount of the note and interest and all costs of the appeal.