## SCHAFER v. MIDLAND HOTEL CO. et al.

No. 8338—Opinion Filed Jan. 8, 1918.

Rehearing Denied March 19, 1918.

(171 Pac. 337.)

### Judgment — New Trial — Judgment Notwithstanding Verdict — Evidence.

Where there is no legal evidence reasonably tending to support the verdict of the jury, the same should be set aside. The evidence in this case examined, and held, that there is no legal evidence reasonably tending to support the judgment for the defendant, and that the court erred in overruling the motion of the plaintiff for judgment, notwithstanding the verdict.

(Syllabus by Pryor, C.)

Error from District Court, Comanche County; Cham Jones, Judge.

Action by Henry Schafer against the Midland Hotel Company and G. H. Block. Judgment for defendants, and plaintiff brings error. Reversed, with directions to enter judgment for plaintiff.

Stuart, Cruce & Cruce and R. B. Forrest, for plaintiff in error.

Johnson & Stevens and B. M. Parmenter, for defendants in error.

Opinion by PRYOR, C. This is an action commenced in the district court of Comanche county by Henry Schafer against the Midland Hotel Company, a corporation, and G. H. Block for the recovery on a note in the sum of $5,000, and the recovery of $2,228 as money advanced to the Midland Hotel Company by the plaintiff, Henry Schafer. The parties will be referred to as they appeared in the trial court.

The plaintiff alleges in his petition that on the 26th day of November, 1909, the Midland Hotel Company made and executed its note for the sum of $5,000, payable to the Third National Bank of St. Louis, and indorsed by the plaintiff, Henry Schafer, and the defendant Garret H. Block; that said note was made for the purpose of securing

a loan of said amount for the use and benefit of the hotel company, and was used for the purpose of completing the Midland Hotel, which was owned by the said corporation; that the note was payable on the 25th day of January, 1910; that said note, at its maturity, was held by the City National Bank of Lawton; that when said note became due, the corporation did not have the funds with which to pay said note, and the plaintiff, as indorser of said note, paid the same; thereby the plaintiff became holder and owner of said note, and by reason thereof the said defendants are due to the plaintiff $5,000, the principal sum and interest thereon, from the 1st day of February, 1910.

For a second cause of action the plaintiff alleges that on the 31st day of December, 1910, he advanced $500 in cash to the said hotel company, which is due and unpaid, and owing to him by said hotel company and said Garret H. Block, and thereafter on the 3d day of January, 1910, the plaintiff advanced the said hotel company $1,728, which is due and unpaid and owing to the plaintiff by the defendant hotel company and Garret H. Block; that on the 13th day of April, 1910, the above amounts, aggregating $7,228, with interest, were due and owing to the plaintiff from the defendants, and on that date the plaintiff sold his interest in the said hotel to the defendant G. H. Block, and on that date the plaintiff and defendant Block entered into an agreement whereby Block agreed to pay all outstanding obligations against the hotel company, and hold this plaintiff harmless by reason thereof.

The answer of the defendants in effect is: They admit the execution of the note by the Midland Hotel Company and the payment of the same by the plaintiff; they also admit that the plaintiff advanced in money the sum of $2,228 to the Midland Hotel Company for its use and benefit, but allege in this connection that prior thereto the plaintiff, Henry Schafer, and Block, organized said corporation with a capital stock of $100,000, and issued to the plaintiff and defendant Block 250 shares each at a par value of $100; that there was an agreement between the plaintiff, Schafer, and the defendant Block that each should contribute an equal amount to the completion and furnishing of the hotel; that the plaintiff, Schafer, had contributed about $18,000, of which the $7,228 involved in this controversy was a part, and alleges that Block had contributed $24,000 towards his pro rata share, and alleges that the $5,000 note was given for the purpose to secure money for the plaintiff which was to be contributed by

him to the hotel company, and that the hotel company and the defendant Block were indorsers on said note for the said plaintiff, Schafer; and denies any liability of the hotel company or the defendant Block on said note, or on the amounts claimed to have been advanced by said plaintiff to the said defendant company. The plaintiff in reply denies all new matter set up by the defendants in their answer. On these issues there was a trial to a jury, and a verdict in favor of the defendants. The plaintiff filed a motion for judgment non obstante veredicto, which was by the court overruled. Judgment was rendered upon the verdict, and the plaintiff appeals.

The only question raised and presented to the trial court was a challenge to the sufficiency of the evidence to sustain the verdict of the jury. This requires an examination of the record by this court to determine whether or not there is any legal evidence to support the verdict.

The real issues of fact in this case are whether or not there was an agreement between the plaintiff and the defendant Block that each should contribute an equal amount to the completion and furnishing of the hotel, and whether or not the amount sued for, the $5,000 note, and the $2,228 was contributed by the plaintiff as his pro rata share. There is no dispute, and it is admitted by the defendants that the plaintiff did advance to the hotel the said amounts. The plaintiff testifies that the $5,000 was borrowed by the corporation, and the defendant Block and the plaintiff were indorsers on the note. He denies in his testimony any agreement or any understanding whereby such funds should be considered as his individual contribution to the hotel company. The evidence relied upon by the defendants to establish their defense is the testimony of the defendant Block.

On the main issue, the defendant Block testified in part as follows in regard to the execution of the note:

"Q. Did you and Schafer have any conversation about the matter, and if so, what was said? A. Schafer came down, and I told him we would have to have some money, and I told him I thought we could get it at the City National Bank, and we went to Mr. English, and he let us have the $5,000. We indorsed it as the Midland Hotel Company, and in person. Q. When you got the money, whose money was it? A. It went to the hotel company."

As to payment:

"Q. Schafer did not pay out any money for the hotel company, did he? A. He paid out $5,000. He paid the bank. Q. Is that

this $5,000 note? A. Yes, sir. Q. You mean to say that he went and paid off the $5,000 note, and that was given by the hotel company? A. That was given by the hotel company. Q. And he paid that off? A. Yes, sir. Q. That is the note that is in controversy here? A. Yes, sir. Q. You asked him to go and do it, or you told him the bank wanted the money? A. Yes, sir; I told him the bank wanted the money. Q. You don't deny that that $1,728 that Schafer turned over to you in cash which you put in there was a charge and a proper charge against the Midland Hotel Company? A. From his standpoint it would be so; he kept track of what he put in. Q. You don't deny that that is a proper charge against the hotel company? A. Of course, it is a proper charge. Q. And so is the $5,000? A. Yes, sir. Q. The $500 item would be? A. Yes, sir; but I never saw anything about the note after he had taken it. I found out from the bank that he paid it. Q. The hotel owed it? A. Yes, sir. Q. If these items were properly chargeable against the Midland Hotel Company, why does not the Midland Hotel Company pay these amounts to Schafer? A. Because when I made the contract with him I told him 'for all his interest in the hotel what I would give him.' Q. What did you understand? A. I told him I would give $18,000 at first for all his interest. This money had been paid by him, and of course he had that much interest in the hotel, and I told him what I would give for his interest, and he hemmed and hawed around, and finally took $18,500 for his interest in the hotel. Q. You had that contract written down in black and white? A. Yes, sir. Q. And now you will not pay him the debt because you understood he was to turn over the note to you in connection with the payment of that stock? A. I made that offer for all his interests."

In this connection it is appropriate to observe that this case was in this court once before, and the original answer admitted the execution of the note by the Midland Hotel Company, and the company received and used the $5,000; also admitted that Schafer had advanced to the hotel company, in cash, the $2,228 involved here.

The contract between the plaintiff and the defendant Block, entered into at the time that Schafer sold his shares to Block, contained the following provision:

"And the said party of the second part [Block] hereby agrees that he will pay off and discharge all obligations against the Midland Hotel Company, and hold and save harmless the said party of the first part [Schafer] from any and all obligations which he may have entered into jointly with the party of the second part or in his own name for the use and benefit of the Midland Hotel Company."

The defense in this action then was:

"That as a part of the consideration of said transaction it was mutually agreed that the said plaintiff should and would release the said defendant Garret H. Block and said corporation from any and all obligations against them or either of them on account of any advances made by said plaintiff to said hotel company then claimed by said plaintiff to the amount of $7,200. * * * That by mutual mistake of the parties and the scrivener who wrote the contract, said provisions were omitted from the contract."

And it was asked that the contract be reformed by the court to incorporate the above provision. This court held on appeal that the evidence of the defendant was not sufficient to justify a reformation of the contract incorporating said provision as having been omitted by mutual mistake.

It will be readily seen that the testimony of the defendant, as above set out, tends rather to support the plaintiff's claim than the defendants', or tends rather to establish the contention in his former answer that the plaintiff had agreed to release the defendant Block and the corporation from any liability by reason of the amounts claimed than to establish his contention under his present answer that there 'was an agreement that this amount should and was contributed as the pro rata share of the plaintiff to the hotel company. The defendant Block further testifies that the hotel cost $96,000, but when he attempts to disclose the actual expenditure, he cannot account for but $46,000 that was actually put into the hotel; $31,000 for the cost of completing the building, and about $15,000 for furniture. When called upon to explain the $50,000 difference between $46,000 and $96,000, he says that he and Schafer always held the original property as purchased by the Midland Hotel Company at a value of $50,000 in case they should want to sell, and that the only way to make the hotel cost $96,000 is to add this $50,000 to the $46,000. In a statement as to the cost and indebtedness of the hotel made by Block to Schafer, Block makes a statement that the hotel company owed him $6,310.94; says that this advancement to the hotel was in material and in cash both; that this included all that the hotel owed him. In another statement and in his answer he claims that he had advanced $24,226, but is unable to explain where, when, or in any manner whatever how he put this money into the hotel, having accounted practically for all of the $46,000, which he says the hotel and furnishings thereof actually cost, to have been received from other sources. He had been served with notice by the plain-.

tiff to produce all the books, he having had the books in charge, showing all of the record of the indebtedness of the hotel, including the advancements that he claimed to have made to the hotel. He produced the books of the hotel, and when questioned about the advancements he claimed to have made, the only response he was able to make was that the books would show, and when he would be unable to show by the books that he had made the advancements he would evade the questions by saying that his lumber yard books would show what he had advanced.

Taking the testimony of the defendant alone, and giving it all of the reasonable inferences and deductions that may be drawn from it, it is so inconsistent and contradictory within itself that it totally fails to establish the defense of the defendants that there was an agreement between Block and Schafer that they would contribute equal amounts necessary for the completion of the hotel, or that there was an agreement by Schafer that he would release Block and the hotel company, at the time Schafer sold to Block, from any liability by reason of any advancements or indebtedness which Schafer might claim against the hotel company, or against Block, or to show that Block had contributed an appreciable amount to the completion of the hotel. And, further, giving the testimony of the defendant its reasonable force and effect, it is more favorable to the plaintiff than to the defendants, and tends more reasonably to support the plaintiff's claim than it does the defendants'. The evidence as a whole is not such that reasonable minds may arrive at a different conclusion. Taking it as a whole, there is but one conclusion to be reached, and that conclusion must be in favor of the plaintiff.

When the evidence of a party is so unsatisfactory, inconsistent, and contradictory that it has within itself no substantial worth, and in particular when it is more favorable to the other party than to the party in whose behalf it is introduced, the court or the jury is not justified in rendering judgment on such evidence, and the court or jury should refuse to follow it. National Union v. Kelley, 42 Okla. 98, 140 Pac. 1157. Therefore the trial judge should have sustained the motion of the plaintiff for judgment non obstante veredicto.

This cause should be reversed, with directions to the trial court to enter judgment for the plaintiff.

By the Court: It is so ordered.