## PURCELL WHOLESALE GROCERY CO. v. LYKINS et al.

No. 16884—Opinion Filed Sept. 21, 1926.

Rehearing Denied Nov. 23, 1926.

**1. Principal and Surety—Surety Signing Demand Note as Principal not Discharged by Renewal of Note Held as Collateral.**

One who signs a promissory note. payable on demand, as a principal, although in fact a surety. and known to the payee as such, is not discharged by the renewal of a note, extending time of payment, held by the payee as collateral security, without the surety's consent.

**2. Appeal and Error—Insufficiency of Evidence—Reversal.**

Where there is no legal evidence reasonably tending to support the verdict of the jury and the judgment of the court based thereon, the same shall be reversed.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from County Court, Carter County; A. J. Hardy, Judge.

Action by the Purcell Wholesale Grocery Company against F. M. Lykins and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Eddleman & Eddleman, for plaintiff in error.

Brown, Brown. & Williams, for defendants in error.

Opinion by JONES, C. This action was instituted in the county court of Carter county by the plaintiff in error, as plaintiff, against the defendants in error, as defendants, to recover on a certain promissory note executed by defendants and payable to plaintiff.

The defendants filed separate answers. The defendant Brown, among other things, averred:

"That he had no interest in the consideration for same, but signed at the solicitations of the defendant Lykins, as accommodation surety, and that fact was well known to plaintiff; that thereafter, and on the 19th day of November, 1920, he, Brown, was advised that defendant Lykins delivered to plaintiff, in order to release him, Brown, certain collateral security, viz.. three notes signed by J. A. Carnathan and Maud Carnathan in the sum of $400 each; that said notes were secured by vendor's lien upon lot 11, block 79 in the city of Ardmore.; that at the time of delivery of said notes, he, Brown, was advised that he was fully released from the note he had signed as accommodation surety with the defendant Lykins."

And further avers that the plaintiff had possession and control of the collateral notes, and that the security was amply worth the amount of the notes executed by the defendants, and that the collateral notes were in excess of the amount of the note sued on. That plaintiffs, without the knowledge or consent of the defendant Brown, did on the 21st day of January, 1923, release the security for said collateral notes. and took in lieu thereof a second mortgage upon the property, which had at all times been mortgaged to secure the payment of said collateral notes. and that at the time the collateral notes became due the property held as security was well worth the amount of said notes; that the plaintiff used no diligence to collect said collateral security, and that by reason of the acts and conduct of the plaintiff, this defendant was released from any obligation on the note sued upon.

The defendant Lykins filed his answer, and after a general denial, admits the execution of the note sued on, but. further answering, avers that he turned over to plaintiff the three Carnathan notes secured as

heretofore stated, and that plaintiff was in possession and in full control of said notes, but neglected to enforce the collection of same, and that by reason of the plaintiff's lack of diligence and negligence, this defendant has been damaged in an amount in excess of the amount sued for, and prays that plaintiff take nothing by this action; to which answer the plaintiff filed a reply, and generally denied all the material affirmative allegations contained in the petition of each of the defendants.

Upon the trial of the case to the court and jury, a verdict was returned in favor of the defendants and against the plaintiff. The verdict contained the following recital:

"We recommend that F. M. Lykins relinquish all right and title to the note signed by J. A. Carnathan and wife to the Purcell Wholesale Grocery House."

The judgment of the trial court is in accord with such recommendation. From this verdict and judgment based thereon the appellant duly prosecutes this appeal, and sets forth various assignments of error, the first of which is that:

"The court erred in overruling plaintiff's motion for judgment on the pleadings and on the evidence."

And from the facts, as disclosed by the record and the law governing same, we are inclined to the opinion that the above assignment of error is well taken. The facts, as disclosed by the record, show that the plaintiff was in the wholesale grocery business, and through its manager, M. L. Cochran of Ardmore, sold certain merchandise to the defendants, who were engaged in the retail grocery business in the city of Ardmore, in the firm name of F. M. Lykins & Company, and that by reason of such transaction the defendants became indebted to the plaintiff in excess of $1,000. Partial payments were made from time to time on such indebtedness, and on July 22, 1919, the notes sued on were executed and delivered to plaintiff, and thereafter, on' or about the 19th day of November, 1920, the Carnathan notes, which were owned and in the possession of the defendant Lykins, were delivered to plaintiff as collateral security, as is disclosed by the receipt duly executed by the plaintiff and delivered to the defendant Lykins at the time the Carnathan notes were delivered to plaintiff. The partnership of Lykins & Company was dissolved, and whether this dissolution was prior to the execution of the note sued on. or subsequent thereto, is not disclosed by the record, but it seems to be agreed that the note was given in settlement of an indebtedness incurred by the partner-

ship prior to the dissolution thereof, and that at the time of the dissolution, the defendant Lykins assumed and agreed to pay all outstanding indebtedness of the company, and in so far as he, the defendant Lykins, was concerned, released the defendant Brown from any further liability then owing by said company.

Under the testimony in the case, as disclosed by the record, there seems to be no question as to the execution of the note sued upon by the defendants, and the only question which we deem it necessary for the court to determine under the status of the record, is that of the effect of giving the collateral security heretofore referred to. We gather from the record that the defendant Lykins had sold and conveyed to the Carnathans the property in Ardmore, and at the time that same was conveyed it was covered by a first mortgage, and Lykins took a second mortgage to secure the balance due him for his equity in said premises, and took a series of three notes for $400 each, which were later delivered to the plaintiff herein as collateral security; and while some contention is made that the Carnathan notes were received by the plaintiff in settlement of the indebtedness evidenced by the note secured by these defendants in favor of plaintiff, the evidence in the case does not sustain this contention. The Carnathan notes were held by the plaintiff merely as collateral security. Some time subsequent to the delivery of the Carnathan notes as collateral, Carnathan was in default on the first mortgage, and in order to take care of certain payments due to the building and loan company, secured another loan, and executed another first mortgage, taking up the original first mortgage, and also executed a new second mortgage to Lykins for the balance due, and executed a new note merging the three notes formerly placed with the plaintiff as collateral, and the interest due thereon, in one note. The defendant Brown contends that by reason of this renewal and extension in the time of payment of the notes placed with the plaintiff as collateral security, without his knowledge or consent, he was released from any liability on the original note herein sued upon; and also contends that for lack of diligence on the part of the plaintiff in the collection of this collateral security when it fell due, and at a time, as he contends, when the security was ample to pay same, he should be released. The note sued upon shows a number of credits which were given by reason of payment made by Carnathan to Lykins on the notes held by Lykins from Carnathan, but no suit had ever been instituted by the plaintiff nor

by the defendant Lykins against Carnathan to enforce payment on the notes held as collateral by plaintiff. The note sued on was payable on demand and the record fails to disclose that the plaintiff, the Purcell Wholesale Grocery Company, ever had at any time any agreement or conversation with the defendant Brown relative to releasing him, and no demand was ever made by Brown of any character upon the Wholesale Grocery Company for a release, and the only question for our determination is whether or not the conduct on the part of plaintiff with the defendant Lykins, and the transaction had between these parties concerning the collateral security, are sufficient to automatically, or, as a matter of law, release the defendant Brown from any liability on the note sued on.

In the case of Cleveland National Bank v. Bickel, 59 Okla. 279, 159 Pac. 302, this court, in dealing with a similar matter, held:

"At the trial, the court, to whom the case was tried without the intervention of a jury, found that the note and mortgage was taken from Wilson, the third party, not in payment of the original obligation, but as collateral security thereto. He held, however, that the surety, Williams, was discharged. Apparently, this holding was based upon the fact that the note taken from Wilson became due after the maturity of the original obligation which it was taken to secure, from which the court concluded that the time of payment of the original obligation was necessarily extended until the maturity of the collateral note, and that this extension having been made without Williams' consent operated to release him. Even under the old act this conclusion was wrong. See Randolph on Commercial Paper (2d Ed.) 961; U. S. v. Hodge, 6 How. 279, 12 L. Ed. 437; Roberson v. Blevins, 57 Kan. 50, 45 Pac. 63; Watauga Bank v. Matson, 99 Tenn. 390, 41 S. W. 1062; 7 Cyc. 894, and cases cited. There was no proof of any agreement to extend, except such as might be drawn from the due date of the collateral."

We think this authority is applicable, especially in view of the fact that there is no proof in the instant case of any agreement of any character extending the time of payment upon the note sued on, and in the syllabus of the opinion the court held:

"One who signs a promissory note executed after the passage of the Negotiable Instruments Act (Rev. Laws 1910, secs. 4169 4175) as a principal, although in fact a surety and known to the payee to be such, is not discharged by the granting of an extension of time for payment to the principal debtor without his consent."

The same rule has been followed by this court in Oklahoma State Bank of Sayre v. Seaton et al., 69 Okla. 99, 170 Pac. 477, in

which case the court also calls attention to sections 4079, 4110, and 4169, R. L. 1910, being sections 7699, 7730, and 7789, C. S.. 1921, which clearly set forth and define the liability of accommodation parties, and the nature of their liability, and the manner in which they may be discharged from liability, and in our judgment the defendant Brown fails to bring himself within any rule that would release him or entitle him to a discharge from liability.

The same doctrine is upheld by the Supreme Court of the United States in U. S. v. A. Hodge and Levi Pierce, 12 L. Ed. 437, and the Supreme Court of Colorado in the case of Fisher v. Denver National Bank, 22 Colo 373, 45 Pac. 440, held:

"The acceptance by a payee, as collateral, of the note of a third party secured by mortgage payable after maturity of the original note, does not establish an extension of the time of payment of the original note to the date when the collateral note becomes payable, in the absence of the evidence of an express agreement therefor."

8 C. J. sections 637 and 638, lays down the rule as follows:

"Both under the Negotiable Instruments Law and independent thereof, there is no extension of a bill or note, so as to postpone suit, or so as to discharge indorsers, where another bill or note, either of the maker or of a third person, is taken merely as collateral or additional security, and there is no agreement postponing the remedy, although indulgence may in fact be granted; but it is otherwise. of course, if there is an agreement for delay, or where the holder of overdue paper takes the note of acceptance of a third person payable at a future day, and agrees to hold the original paper until maturity of the new paper."

Under these authorities, we think the motion of plaintiff for judgment on the law and the facts should have been sustained, because, as we view it under the facts as disclosed by the record in this case, no conclusion could be reached or reasonable inference drawn from the evidence that would justify or support the verdict of the jury and the judgment of the trial court. This court has repeatedly. held that:

"Where there is no legal evidence reasonably tending to support the verdict of the jury the same should be set as'de. * * *" Schafer v. Midland Hotel Co., 69 Okla. 201, 171 Pac. 337

The judgment of the trial court should be and the same is hereby reversed and remanded. with directions to render judgment in favor of plaintiff and against the defendants for the amount due, on the note sued upon.

By the Court: It is so ordered.

Note.—See under (1) 8 C. J. p. 447, §660. (2) 4 C. J. p. 856, §2835; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. .Supp. p. 79.