## THE FIRST NATIONAL BANK OF McCLUSKY, a Corporation, v. LOUIS MEYER.

(152 N. W. 657.)

**Promissory note — signer of on face — accommodation maker — no personal consideration — primarily liable to payee as joint maker — knowledge of payee of nature of transaction — immaterial — part payment of note on suit against maker and garnishee — no defense — offset — amount received by payee.**

One who signs a promissory note on the face thereof as an accommodation

---

Note.—Generally as to the rights and liabilities of makers and indorsers of accommodation paper, see note in 31 Am. St. Rep. 745.

As to effect under negotiable instruments law, of extension of time to principal, to release one who, on the face of the instrument, is primarily liable, but who is in fact surety, see notes in 10 L.R.A.(N.S.) 129 and 26 L.R.A.(N.S.) 99.

maker, and who receives no personal consideration for the same, is primarily liable to the payee on such note as a joint maker under the provisions of § 6914 and § 7076, Compiled Laws of 1913, even though such payee knows at the time of the signing and delivery of the accommodation nature of the transaction. Such accommodation maker, when sued upon such note, cannot plead as a complete defense and a release, the fact that the payee may have theretofore sued his joint maker on such note and in such suit partially compromised with a garnishee defendant, but can only offset as against said note the amount which was actually received and collected by the said payee.

Opinion filed April 29, 1915.

Appeal from the District Court of Sheridan County, *Nuessle*, J.

Action to recover on a promissory note. Judgment for plaintiff. Defendant appeals.

Affirmed.

Statement of facts by BRUCE, J.

The complaint in this action alleges that the defendant "made, executed, and delivered to the plaintiff his joint and several note, together with one J. L. Filbey, both being primarily liable, said defendant signing as an accommodation maker and thereby promising to pay to the plaintiff or his order the sum of $100 on the 1st day of October, 1911, with interest at the rate of 12 per cent." It also alleged that the payment has not been made, and judgment is demanded. The answer denies every allegation not specifically admitted. It admits that "on or about the 10th day of August, 1911, the defendant, together with one J. L. Filbey, made, executed, and delivered to the plaintiff herein a certain promissory note dated August 10, 1911," etc. It further alleges that "the defendant signed said note as a surety for one J. L. Filbey, the principal maker thereof; that he never received any of the consideration for said note, which fact the plaintiff well knew and understood at the time of the execution of said note." It further alleges that after the note became due an action was started in justice court against the said J. L. Filbey alone and the Northern Pacific Railway Company as garnishee "upon two certain promissory notes; one of the said notes being for the sum of $50 and interest, and the other note for $100 and interest; the last-named note being the note herein described and the same identical note which is described in the complaint and made the basis

of this action." It further alleges that in this action judgment was entered against the said J. L. Filbey and the Northern Pacific Railway Company, garnishee, for the sum of $182.27, being the principal, interest, and costs. It further alleged that thereafter, but prior to the commencement of the present action and prior to the demanding payment on the said note of the present defendant, Louis Meyer, and without the knowledge or consent of the defendant in this action, "the plaintiff in this action made a complete and full settlement of said judgment entered in its favor against the Northern Pacific Railway Company, a corporation, in such garnishment action, and by the terms of said settlement entered in its favor against the Northern Pacific Railway Company, a corporation, in such garnishment action and by the terms of said settlement did accept from such Northern Pacific Railway Company the sum of $100 for a full and complete settlement of its entire claim against the said Northern Pacific Railway Company, and a full settlement of said judgment entered in said garnishment action."

The case was tried to the district court before a jury. Both parties, however, having made a motion for a directed verdict, the court made findings of fact to the effect that the defendant signed said note as an accommodation maker; that the prior action was brought as alleged in the complaint against the defendant Filbey and the Northern Pacific Railway Company, garnishee, and that in such action the claim against the garnishee was settled for the sum of $100. The district court, however, found as conclusions of law: "(1) That the defendant is liable, jointly and severally, on the above note; (2) that the $100 recovered from the railway company must be applied on the judgment against J. L. Filbey; (3) that the plaintiff, therefore, is entitled to a judgment as follows: First, interest on the note for $100 at 12 per cent from August 10, 1911, to August 1, 1912, and in addition thereto, the sum of $82.27 and interest at 12 per cent thereon from August 1, 1912, to date of this judgment, besides the costs and disbursements of this action." The trial court, in short, held that the balance of the amount which was actually collected from the railway company in the garnishee proceedings, after paying the prior note of $50 which was executed by Filbey alone, and the costs of the proceedings, was all that was required to be credited on the note of $100, which is now sued upon, and that the compromise of the garnishee judgment in the prior proceeding did not

effect a release of the present defendant. From this judgment the defendant, Louis Meyer, appeals.

*Frank I. Temple,* for appellant.

An accommodation maker on a promissory note is, in fact, a surety and entitled to all the rights of such. Rev. Codes 1905, §§ 6099, 6105, 6110, 6111, 6331, Comp. Laws 1913, §§ 6675, 6681, 6686, 6687, 6914; Bailey Loan Co. v. Seward, 9 S. D. 326, 69 N. W. 60; Smith v. Willing, 123 Wis. 377, 68 L.R.A. 945, 101 N. W. 692; Nelson v. Munch, 28 Minn. 314, 9 N. W. 863; Price County Bank v. McKenzie, 91 Wis. 658, 65 N. W. 507.

The release of an attachment against a principal maker releases the surety. First Nat. Bank v. Watt, 7 Idaho, 510, 64 Pac. 223; Gotzian v. Heine, 87 Minn. 429, 92 N. W. 398; Magney v. Roberts, 129 Iowa, 218, 105 N. W. 430.

Where the payee satisfies a mortgage securing a note so signed, he releases the surety, and the debt to that extent was satisfied. King v. Parks, 26 Tex. Civ. App. 95, 63 S. W. 900; Pierce v. Atwood, 64 Neb. 92, 89 N. W. 669.

A creditor who, without the consent of the surety, voluntarily parts with the security, thereby releases the surety to the extent he has been thereby damaged. Stewart v. American Exch. Nat. Bank, 54 Neb. 461, 74 N. W. 865; 16 Decen. Dig. art. 115 p. 115.

Where a creditor sues the debtor and acquires a lien, under attachment on property, and releases such lien voluntarily, he releases those bound for the debt as sureties. First Nat. Bank v. Watt, 7 Idaho, 510, 64 Pac. 223; Brandt, Suretyship, 494; Bowen v. Port Huron Engine & Thresher Co. 109 Iowa, 255, 47 L.R.A. 131, 77 Am. St. Rep. 539, 80 N. W. 345.

*Peter A. Winter,* for respondent.

One who signs a note as principal cannot set up an independent collateral agreement limiting or exempting him from liability; he is bound by the terms of his obligation. Anderson v. Mitchell, 51 Wash. 265, 98 Pac. 751.

Courts should aim to follow the negotiable instruments act as far as possible, to the end that the decisions may be uniform in the country.

Richards v. Market Exch. Bank Co. 81 Ohio St. 348, 26 L.R.A.(N.S.) 99, 90 N. E. 1000.

All defenses not made to appear in the answer are considered waived. 31 Cyc. 128; Ex parte Bergman, 18 Nev. 331, 4 Pac. 209; St. Louis, I. M. & S. R. Co. v. Wiggam, 98 Ark. 259, 135 S. W. 889; Early County v. Fiedler & A. Co. 4 Ga. App. 268, 63 S. E. 353; W. W. Brown Constr. Co. v. MacArthur Bros. Co. 236 Mo. 41, 139 S. W. 104; State v. Clatsop County, 63 Or. 377, 125 Pac. 271; Western U. Teleg. Co. v. Harris, 105 Tex. 320, 148 S. W. 284; Swett v. Antelope County Farmers' Mut. Ins. Co. 91 Neb. 561, 136 N. W. 347.

When a special plea is made, it should be certain. 31 Cyc. 215, 216; Ward v. Brady, 63 Misc. 435, 116 N. Y. Supp. 456.

BRUCE, J. (after stating the facts as above). No exception seems to have been taken to the findings of fact of the learned trial court. They, at any rate, are borne out by the evidence. The only question for determination in this case, therefore, is whether one who signs a note upon its face as an accommodation maker, and who receives no personal consideration for the same, is primarily liable on such note as a joint maker, where at the time of such making the payee knew of the accommodation nature of his signing, and whether, when sued upon such note, such accommodation maker may plead as a defense and release that such payee had before brought suit against the defendant's comaker, and in such suit had obtained judgment against a garnishee defendant for an amount sufficient to satisfy the note, and had compromised such judgment against said garnishee defendant for a sum merely sufficient to pay another note sued upon at the same time and against the same original maker and a small amount upon the note upon which such Filbey and the present defendant were comakers, or whether all that he could expect in the present action would be that the amount that was left after such settlement, and after paying the note executed by the original maker alone and the costs of the action were paid, should be credited on the present note.

We are quite satisfied that all that the present defendant is entitled to is a credit for the money which the plaintiff actually received for credit and which he credited on the present note. This the trial court allowed, and, in our opinion, the judgment should be affirmed. When

the plaintiff sued the defendant Filbey and made the Northern Pacific Railway Company a garnishee defendant, he sued on a personal note executed by Filbey alone for $50 and on the joint note now in controversy. The present defendant was not a party to this suit, and the plaintiff had the right to make any application of the judgment and settlement that he saw fit. The personal note at any rate was prior to the joint note.

We are satisfied that the settlement with the garnishee defendant for a less amount than the judgment obtained against it did not release the present defendant. There would unquestionably be some doubt upon this proposition if we were dealing with the common law or with the law merchant. We are dealing, however, with the so-called negotiable instruments act which has been adopted in North Dakota. That act in § 6331, Rev. Codes 1905, being § 6914, Compiled Laws of 1913, provides: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. *Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.*" Section 6365, Rev. Codes 1905, being § 6948, Compiled Laws of 1913, provides: "A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Section 6421, Rev. Codes 1905, being § 7004, Compiled Laws of 1913, reads as follows: "A negotiable instrument is discharged; (1) By payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated where the instrument is made or accepted for accommodation; (3) by the intentional cancelation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right." Section 6422, Rev. Codes 1905, being § 7005, Compiled Laws of 1913, reads as follows: "A person secondarily liable on the instrument is discharged: (1) By any act which discharges the instrument; (2) by the intentional cancelation of his signature by the holder; (3) by the discharge of a prior party; (4) by a valid tender of payment

made by a prior party; (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; (6) by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." Section 6494, Rev. Codes 1905, being § 7076, Compiled Laws of 1913, reads as follows: *"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same.* All other parties are 'secondarily' liable."

In passing upon a similar case, the supreme court of Ohio, in the case of Richards v. Market Exch. Bank Co. 81 Ohio St. 348, 26 L.R.A. (N.S.) 99, 90 N. E. 1000, said: "The ultimate question, therefore, is: Where parties execute a joint and several promissory note all signing on the face thereof, one being in fact a surety, and the holder of the note, with knowledge of this fact, at the maturity of the note, extends the time of payment for a valuable consideration, and without the consent of the surety, is the latter discharged from liability on the note? . . . It is to be understood that here, and elsewhere in the opinion, we are dealing with the liability of an accommodation maker, who has signed on the face of the note. By the act under review, the discharge of negotiable instruments as to persons primarily liable is provided in § 3175j as follows: 'Discharge of Negotiable Instruments. Section 3175j. [Instrument; how discharged.] A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancelation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right.' The section following makes provision for discharge with respect to persons secondarily liable, *viz.:* 'Section 3175k. [When person secondarily liable on, discharged.] A person secondarily liable on the instrument is discharged: (1) By any act which discharges the instrument; (2) by the intentional cancelation of his signature by the holder;. (3) by the discharge of a prior party; (4)

by a valid tender of payment made by a prior party; (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; (6) by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the person secondarily liable, or unless the right of recourse against such party is expressly reserved.' The entire field of discharge appears to be here covered, and, unless some controlling reason can be adduced showing that this statute doesn't apply, its application to and control of the case at bar would seem to follow. It is, however, insisted by counsel for plaintiff in error that, since there is in the later act no express repeal of earlier legislation bearing on the rights and liabilities of sureties on negotiable instruments, and since repeals by implication are not favored, we must conclude that the former legislation is still in force, and inasmuch as there is apparent conflict between the negotiable instruments act as construed by the courts below, and the earlier legislation, it must be presumed that the construction thus given the act is not the correct construction; and that the purpose ascribed by those courts to the general assembly in passing the act was not its real purpose. The sections of the Revised Statutes to which special attention is called by counsel are numbers 5419, 5832, and 5836, though general reference is made to other sections of the same chapter. Without taking space to give the above-mentioned sections in detail, their substance may be stated thus: Section 5419 provides how judgment against principal and surety may be entered, and for execution in such cases; Section 5832 provides that sureties on bank paper who were known to be such at the time the contract was made may prove that fact, notwithstanding it may contradict the face of the instrument; and § 5836, that a surety in a judgment who has paid it may be subrogated to the rights of the judgment creditor, and may revive the judgment if it has become dormant. We fail to perceive any necessary conflict between these sections and the negotiable instruments act in the particulars here involved, and in this respect we are in accord with the claims of counsel; but does it follow that the conclusion of counsel is correct? It is not contended that either of these sections, or any part of chapter 12, title 1, division 7, provides for the discharge of a surety, where a valid agreement for extension of time of payment has been made as between the holder and the principal debtor;

that rule resting entirely upon the principles of the common law. Recurring again to the above cited sections, it will be noted that §§ 5419 and 5836 are mainly for the protection and advantage of the surety as between him and the principal debtor, and affect the rights or liabilities of the surety as between him and the holder only incidentally. Section 5419 provides for a situation which may arise when judgment is taken as to the form thereof, and thereafter as to its enforcement, and § 5836 confers rights upon a surety after judgment; neither section providing for a situation arising, save as above indicated, before judgment, neither giving any discharge from liability on the instrument, and preventing judgment. The present act, § 3175j, as we have already found, provides only for the discharge of a party by a discharge of the instrument itself. Section 5832 is an ancient statute intended for the protection of sureties in contracts for the payment of money to banks and bankers, but only to the extent of having such relation defined and established, and securing to such parties the privilege of sureties, notwithstanding any contrary expression in the contract itself; that is, the terms of the written instrument can, by virtue of this section, be contradicted by oral proof, and such parties are given 'all the privileges of sureties,' but there is no attempt to define what those privileges are. In neither of these sections is there any attempt to discharge the surety from the debt itself. So, we find that each section subserves its own separate and distinct purpose, and neither appears to us, to be in any manner or to any extent inconsistent with later legislation. . . . As conclusions, therefore, our holding is that, under favor of the negotiable instruments act, one who signs a promissory note on the face thereof, though he be in fact an accommodation maker and known as such to the holder, thereby becomes primarily liable for its payment; also, that such party may be discharged from liability in any one of the ways provided in § 3175j of said act, but not otherwise; and that a contract between the holder of the instrument and the principal for the extension of time of payment, although upon a valuable consideration, and without the consent of the surety, will not have the effect of discharging him from liability. To avoid possible misconception, it perhaps should be added that this holding does not imply that the ordinary defenses which go to the original liability of the party, such as fraud, duress, or illegality in respect to the consideration, may not be resorted to as heretofore. The term 'discharge' itself implies

an original obligation. If fraud, duress, illegality as to consideration, etc., intervened at the inception of the instrument, then the accommodation party never was liable. Confusion of thought is likely to result from a failure to distinguish between a defense which goes to original liability and one which arises from some subsequent act or conduct. We further hold that §§ 3175o and 3175p apply to the physical alteration of the instrument itself, and do not apply to a contract between the holder and the principal for an extension of time of payment of the instrument."

This holding as to the liability of an accommodation maker under the uniform negotiable instruments act seems to express the now general opinion of the courts who have passed upon the question. See Vanderfort v. Farmers' & M. Nat. Bank, 105 Md. 164, 10 L.R.A.(N.S.) 129, 66 Atl. 47; Cellers v. Meachem (Sellers v. Lyons) 49 Or. 186, 10 L.R.A. (N.S.) 133, 89 Pac. 426, 13 Ann. Cas. 997; Wolstenholme v. Smith, 34 Utah, 300, 97 Pac. 329; Anderson v. Mitchell, 51 Wash. 265, 98 Pac. 751; Bradley Engineering & Mfg. Co. v. Heyburn, 56 Wash. 628, 134 Am. St. Rep. 1127, 106 Pac. 170. It seems to be based upon the clear and unequivocal language of the statute, and we see no reason for refusing to adopt this now quite general holding. It is, indeed, quite important that the interpretations by the courts of the various states of the provisions of the negotiable instruments act shall be as uniform as. is now the act itself.

The fact that no personal consideration passed to the defendant Meyer, and that this fact was known to the plaintiff, makes no difference in the law. No direct consideration to him, indeed, was necessary. If a suretyship at all, the suretyship is in the form of an independent and absolute undertaking. It is a contract whereby the surety becomes bound primarily to the creditor to save him harmless independently, and whether the principal debtor makes default or not. As we have before said, we are not here construing the common law or the law merchant, but the provisions of the negotiable instruments act.

The judgment of the District Court is affirmed.