CLEM v. CHAPMAN, Commissioner of Insurance and Banking. (No. 1623.)

(Court of Civil Appeals of Texas. El Paso. April 10, 1924. Rehearing Denied May 8, 1924.)

1. **Bills and notes** ⬤ͤ48—Maker of joint and several note held primarily liable.

Appellant, as one maker of joint and several note, *held* primarily liable thereon, under Negotiable Instrument Act, § 192 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—192), although, as between the makers, appellant was regarded as secondarily liable, and he received no part of the consideration for the note.

2. **Bills and notes** ⬤ͤ140—Extension of time not discharge of one primarily liable.

Where appellant was primarily liable on note, an extension of time of payment granted by holder without appellant's consent did not discharge him, in view of Negotiable Instrument Law, § 119 (Vernon's Ann. Civ. St. Supp. art. 6001—119); section 120 (article 6001—120) not applying.

3. **Alteration of Instruments** ⬤ͤ2—"Mutilation" of note avoiding it under Negotiable Instrument Act defined.

To constitute a "mutilation" of a note or other contract which will avoid it under the Negotiable Instrument Act (Vernon's Ann.

Civ. St. Supp. 1922, arts. 6001—1 to 6001—197), there must be some change or alteration in the writing itself constituting the evidence of the contract so as to make it another and different instrument and no longer evidence of the contract which the parties made.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mutilate–Mutilation.]

**4. Alteration of instruments &#9901;9—Change of marginal notation upon note extending time of payment held not to discharge one primarily liable.**

Under Negotiable Instruments Act, § 125 (Vernon's Ann. Civ St. Supp. 1922, art. 6001—125), alteration by holder of marginal notation of due date by striking out the word "August" and inserting above the word "Oct." *held* not such material alteration of note as to discharge one primarily liable on note.

Appeal from Eastland County Court, at Law; J. H. Jones, Judge.

Action by J. L. Chapman, as Commissioner of Insurance and Banking, against R. H. Clem and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellant.

Carl P. Springer, of Eastland, for appellee. .

WALTHALL, J. J. L. Chapman, commissioner of insurance and banking, brought this suit against R. H. Clem and C. M. McNatt upon a promissory note held by the Guaranty State Bank of Olden, Tex., at the time that bank became insolvent and was taken over by the commissioner for the purpose of liquidation.

Clem set up three defenses. In view of the similarity of the propositions presented, we need state only two:

First. That he was merely a surety upon the note, McNatt being the principal; that at the maturity of the note, the bank, holder at that time, with the knowledge of the fact that he was a surety only, and without his knowledge or consent, extended the due date for 60 days upon consideration of the payment by McNatt of the interest for the extended time.

Second. That on the day of the maturity the note indicated on its face that it was due August 26, 1921. The bank, the holder of the note, without his knowledge or consent erased the word "August" and substituted therefor the word "Oct." thus making a material alteration in the note.

The case was tried before the court without a jury, and judgment rendered in favor of appellee.

The material issuable facts were found by the court and are substantially as follows:

McNatt and Clem executed and delivered the note in question to the bank. Without stating the description of the note as in the court's finding, in the absence of a statement of facts, we copy the note itself as found in appellee's brief, as better illustrating the facts found by the court than a description of the note and notation, as follows:

           "Olden, Texas, May 28, 1921.
"No. 751.            $600.00.

"August 26, 1921, after date, without grace, for value received, we and each of us jointly and severally promise to pay to the order of ourselves at the Guaranty State Bank, of Olden, Texas, the sum of six hundred and no/100 dollars, together with interest thereon at the rate of ten per cent. per annum from maturity until paid; principal and interest of this note payable at the office of The Guaranty State Bank of Olden, Texas, in Eastland County, Texas.

"If this note is not paid at maturity and is placed in the hands of an attorney for collection, we agree to pay ten per cent. additional upon the principal and interest hereof as attorney's fees for collection.' Each maker, surety and indorser hereon, especially waives grace, protest, notice and presentation for payment.          C. M. McNatt.
           "R. H. Clem.

             Oct.
"Due: ~~August~~ 26, 1921.
"Address: c/o Hotel Bernardo.
"Indorsements:          C. M. McNatt.
           "R. M. Clem.
"Interest paid to Oct. 26, 1921."

Just above the word "August" was written the word "Oct." Clem received no part of the consideration of the note. Clem did not agree to any extension of time of payment of the note. The officers of the bank knowing that Clem was surety on the note for McNatt extended the time of payment of said note from August 26 to October 26, 1921. After the bank had changed the due date of the note as above, the agent of the commissioner of insurance and banking, who had charge of the bank and its assets, treated the note as due on October 26, 1921, and undertook to enforce its collection as due of that date.

The trial court concluded that the change in the original notation from August to October was not such material alteration of the instrument as to release Clem; that by the terms of the note Clem was primarily liable and was not released by the extension of the time of its payment.

Upon the above findings and conclusions the trial court entered judgment for the plaintiff against both defendants. Clem alone prosecutes this appeal.

### Opinion.

[1] Appellant, under several propositions, presents two contentions: He insists, first, that he was discharged from liability by the valid and binding extension of the time of payment of the note given the principal, Mc-

Natt, by the bank, and second, the action of the bank, the holder of the note, in changing the marginal due date from August to October, was such material alteration of the note as to discharge him from liability.

Appellant has cited a number of cases and authorities to sustain his proposition that a surety on a promissory note is discharged by a valid extension of time to the principal maker of the note, such extension made without the consent of the surety. We need not discuss the question as to the rule in this state as to the principals or sureties, prior to the passage of the Uniform Negotiable Instrument Act passed in this state in 1919 (Vernon's Ann. Civ. St. Supp. 1924, arts. 6001—1 to 6001—197). In that year the Texas Legislature passed the Uniform Negotiable Instrument Act; the express purpose of its passage being to make uniform the law of negotiable instruments in this state.

Appellant in his propositions assumes that he was a surety on the note and not a principal maker of the note. The facts found by the trial court do not state that he was a surety or so regarded by the bank. The trial court under the facts found concluded that "Clem was primarily liable for the payment thereof." The word "surety" does not appear on the text of the act at all, but the liability of the parties on negotiable instruments is referred to as being primarily or secondarily liable.

Appellant, being one of the makers of the note, and by its expressed terms absolutely required to pay it, is primarily liable thereon; all others are secondarily liable. Section 192 of the Negotiable Instrument Act, article 6001—192, Vernon's Texas Civil and Criminal Statutes, 1922, Supplement.

The fact that, as between themselves, McNatt regarded Clem as secondarily liable on the note, or the fact that Clem received no part of the consideration for the note, would not have the legal effect as between Clem and the bank to make Clem secondarily liable on the note.

[2] The trial court found no fact that would amount to a discharge of the maker of a negotiable instrument. And we do not understand appellant as insisting that he was discharged by any act or acts of the holder of the note other than the extension of the time of payment, and the marginal alteration of its due date, as above indicated, on the note.

Section 119 of the Negotiable Instrument Act provides for circumstances by any one of which a negotiable instrument is discharged. They are:

"1. By payment in due course by or on behalf of the principal debtor;

"2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"3. By the intentional cancellation thereof by the holder;

"4. By any other act which will discharge a simple contract for the payment of money;

"5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

Now, the only facts suggested as affecting the discharge are the extension of time for the payment, and the alteration of the marginal due date. It will be seen from the above that the extension of the time for payment is not stated as one of the circumstances effecting a discharge of one primarily liable.

Any agreement binding the holder of the note to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved, by express provision of section 120, of the Negotiable Instrument Act, has the effect to discharge one secondarily liable, but no such provision applies to one primarily liable, as here.

It was said in Richards v. Market Exchange National Bank, 81 Ohio St. 348, 90 N. E. 1000, 26 L. R. A. (N .S.) 99, by the Supreme Court of Ohio, after reviewing decisions of other states, in reviewing a similar provision of the Uniform Negotiable Instrument Act, that—

"Where it is declared, as it is here declared, that a party to such an instrument, who is absolutely required to pay the same, is primarily liable and can be discharged from liability in certain specified ways and for certain specified causes, the reasonable conclusion is that the purpose was to enact that such party cannot be so discharged in any other way, or for any other causes."

A similar holding is made in Vanderford v. F. & M. National Bank, 105 Md. 164, 66 Atl. 47, 10 L. R. A (N. S.) 129, where the defense was that Vanderford was a surety on the note and not a joint and several maker, as the terms of the note imported, and where the holder of the note for a valuable consideration paid, and without the knowledge and consent of Vanderford, agreed with one of the joint makers to extend the time and did extend the time for its payment, and for which reason Vanderford pleaded a discharge, the court said:

"When the Legislature has declared, as it has done in these sections, that a negotiable instrument signed by a party who is primarily liable thereon, as that liability is defined by the act, may be discharged in one of five specified methods, it would seem plain that it meant that the particular method prescribed for the accomplishment of that result should exclude a discharge by any other or different method, upon the familiar maxim that the express mention of one thing implies the exclusion of another."

See, also, First National Bank v. Meyer, 30 N. D. 388, 152 N. W. 657; Cellers v.

Meachem, 49 Or. 186, 89 Pac. 426, 10 L. R. A. (N. S.) 133, 13 Ann. Cas. 997; Bradley Engineering & Mfg. Co. v. Heyburn, 56 Wash. 628, 106 Pac. 170, 134 Am. St. Rep. 1127; Cleveland Nat. Bank v. Bickel, 59 Okl. 279, 159 Pac. 302.

It seems to us that it is as important to have a uniform construction of the law, and its several provisions, as it is to have a uniform law itself. Where the question has come before the courts they have uniformly held that the passage of the Negotiable Instrument Act repealed the prior law as being in conflict with the act itself. We concur in the above expressions of the several courts, and hold that the extension of the time granted by the bank did not have the effect to discharge Clem; he being primarily liable on the note.

[3, 4] This brings us to the second question presented: Was the alteration by the bank on the margin of the note, by striking out the word "August" and inserting above the word "Oct.," such material alteration as to have the legal effect to discharge appellant, Clem? Section 125 of the Negotiable Instrument Act, provides:

"Any alteration which changes:

"1. The date;

"2. The sum payable, either for principal or interest;

"3. The time or place of payment;

"4. The number of the relations of the parties;

"5. The medium of currency in which payment is to be made; or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

The question has been before the courts quite frequently both under the Negotiable Instrument Act and in jurisdictions where the act has not been passed. In Eaton v. Delay, 32 N. D. 328, 155 N. W. 644, L. R. A. 1916D, 528, the Supreme Court of North Dakota, under the Negotiable Instrument Act, passed upon a very similar question. There the note as executed and delivered was dated March 26, 1912, payable December 1, 1912, and signed by Delay and two others. On the margin of the note appeared the following: "$575.00, extended to ———" (the time left blank). About December 1, 1912, at the request of Delay, Easton, the payee of the note, on payment of the interest, inserted in the margin of the note a notation of the extension, thus making the marginal reading to be: "$575.00. Extended to May 1, 1913." Delay made default in the payment of the note. The other two signers of the note answered that they were only sureties for the accommodation of Delay, and pleaded the extension as a material alteration, without their knowledge or consent. The Supreme Court after quoting the Negotiable Instrument Act of that state (the same in verbiage as section 125, above), and, after quoting at some length from Bay v. Shrader, 50 Miss. 326, and Theopold Mercantile Co. v. Deike, 76 Minn. 121, 78 N. W. 977, 77 Am. St. Rep. 607, as to the materiality of an alteration on parts of the note disconnected from the body of the note itself, said:

"The notation in the margin of the note was made after it became due The contract evidenced by the note signed by the defendants remained unchanged. The contractual effect of the note, and the rights and liabilities of the makers thereof, were in no manner affected. The contract remained exactly the same as it was at the time of its execution and delivery. The notation in the margin did not become a part of the contract, or affect the defendants in any particular."

—and holding that the notation in the margin of the note does not purport to be a part of the contract signed by the makers of the note, but merely a memorandum for the convenience of the holder. The court referred to a large number of cases as making similar holdings. Those we have reviewed sustain the holding.

To constitute a mutilation of a note or other contract which will avoid it, under the Negotiable Instrument Act, there must be some change or alteration in the writing itself constituting the evidence of the contract, so as to make it another and different instrument, and no longer evidence of the contract which the parties made. The only party affected by such notation is the holder of the note, as an admission tending to show an agreement for such extension, but would not of itself be evidence against the makers. Eaton v. Delay, supra.

We think it would be more confusing than enlightening to discuss the holdings of the courts prior to the passage of the Negotiable Instrument Act as to the relation a marginal notation on a note bears to the note itself.

Finding no reversible error, the case is affirmed.

HIGGINS, J. I concur in the affirmance but not in all that is said in the discussion contained in the main opinion.

1. Clem was a surety upon the note, but absolutely required to pay the same and primarily liable thereon. Section 192, Negotiable Instrument Law. Section 120 of the law relating to the discharge of persons secondarily liable has no application to him. Under the cases cited in the main opinion I concur in the ruling that the extension in the time of payment without the consent of Clem did not discharge him.

2. The marginal notation upon the note was not a part of the note itself but a mere memorandum of the maturity date for the convenience of the holder. The alteration of such memorandum did not alter the effect

of the note in any respect. Section 125, Negotiable Instrument Law.

Under the authorities cited in the main opinion, I concur in the ruling that the alteration 'in the marginal notation did not discharge appellant.