**BENEFICIAL FINANCE COMPANY OF JAMESTOWN, Plaintiff and Appellant,**

**v.**

**Bruce LAWRENCE, Defendant and Appellee.**

**Civ. No. 9811.**

Supreme Court of North Dakota.

Dec. 19, 1980.

Rehearing Denied Jan. 23, 1981.

Solberg, Stewart & Boulger, Fargo, for plaintiff and appellant; argued by John V. Boulger, Fargo.

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for defendent and appellee; submitted on brief.

PEDERSON, Justice.

This is an appeal by the lender, Beneficial, from a judgment which held that, under the Uniform Commercial Code (Title 41, NDCC), the obligation of the accommodation party, Bruce Lawrence, was discharged because Beneficial unjustifiably permitted the impairment of collateral when it failed to perfect a security interest.[1] We do not agree that Beneficial unjustifiably impaired collateral in this case. The judgment is reversed.

Although there had been a series of loan transactions involving some or all of the participants, the significant item in this dispute is a note dated August 15, 1977. The document is a preprinted form, parts unreadable, in many respects ambiguous, designed to cover a variety of transactions. The borrower is identified, in an upper, preprinted block, as Lorin Lawrence and his spouse, Patricia Lawrence. The note is signed:

| [s] | Lorin Lawrence | (SEAL) |
| [s] | Pat Lawrence | (SEAL) |
| [s] | Bruce Lawrence | (SEAL) |

In an upper, right-hand location on the document is found the following statement:

"SECURITY: The security for this loan is checked below. A check of either box under the word 'Security Agreement' indicates a security interest has been created in the items listed alongside such box."

Immediately below the statement quoted is the following box:

"Security Agreement dated _____08/15/77_____
on ☐ Auto _____
           Yr                    Make

on ☒ All household goods, excluding motor vehicles but including household furniture, television sets, electrical appliances, stereo phonographs, furnishings, carpets, draperies, chinaware and other household goods of every kind owned by Borrower(s) and located in or about the Borrower(s') place of residence at their address shown hereon.

Such Security Agreement secures all future advances or loans made by Lender to Borrower(s), at Lender's option, within 5 years of its date.

☐ Accommod      ☐ Real Estate
    Maker                Mortgage

INSURANCE IS INCLUDED IF COST OR PREMIUM IS INSERTED TO THE LEFT HEREON."

The only other words on the note which bear upon the dispute in this case state: "For Value Received, the undersigned jointly and severally promise to pay to the order of the Lender named below, . . . ."

This case was tried upon the facts without a jury, accordingly Rule 52(a), NDRCivP, has application, at least in part. The trial court found the facts specially and stated separately its conclusions of law thereon and directed the entry of the appropriate judgment.

If we understand Beneficial's argument, it challenges no finding of fact but disputes the trial court's conclusion of law:

"6. That Plaintiff's failure to perfect the security interest caused an unjustifiable impairment of collateral entitling Defendant to be discharged."

Two of the findings of fact pertinent to our review of that conclusion of law are:

"7. That Plaintiff had notice that Defendant signed the note in the capacity of an accommodation maker.

.       .       .       .       .

---

1. Procedures for perfecting security interests are governed by Chapter 41' 09, NDCC, Uniform Commercial Code—Secured Transactions (Article 9 UCC).

"13. That creditors other than Plaintiff, pursuant to security interests perfected by other creditors prior to April of 1976, repossessed and recovered all property which Lorin and Patricia Lawrence had pledged as security to Plaintiff."

■ We are permitted to examine trial court memorandum opinions in our search for a clear understanding of the findings and conclusions. *Hegge v. Hegge*, 236 N.W.2d 910, 914 (N.D.1975). From our reading of the oral memorandum opinion, remarks by the trial judge at the end of the trial found in the transcript, we understand, in spite of the ambiguity of the note on its face, that findings numbered 7 and 13 mean that Bruce Lawrence (although not identified as such on the face of the note) is an accommodation maker of the note sued on and that, under the circumstances of this case, a perfected security interest document would have provided neither Beneficial nor Bruce Lawrence any security interest in the collateral.

Under the Uniform Commercial Code—Commercial Paper, Chapter 41–03, NDCC (Article 3, UCC), not all accommodation parties are accommodation makers. Use of unspecific, generic terms appears to be a cause for confusion in some UCC cases, and perhaps in this case also. See, e. g., White and Summers, Hornbook Series, Uniform Commercial Code, Second Edition, Chapter 13, at page 516 and following.

Our primary concern requires that we understand Bruce Lawrence's status, his obligation to Beneficial, and Beneficial's obligation to him. We start with the UCC definition of "accommodation party." Section 41–03–52(1), NDCC (3–415, UCC) provides:

"1. The holder discharges any party to the instrument to the extent that without for the purpose of lending his name to another party to it."

An accommodation party "is liable in the capacity in which he has signed." Section 41–03–52(2), NDCC (3–415, UCC). Section 41–03–18(5), NDCC (3–118, UCC) specifies that:

"Unless the instrument otherwise specifies two or more persons who sign as maker, acceptor or drawer or endorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such words as 'I promise to pay.'"

Long before this State adopted the Uniform Commercial Code, this court had held that accommodation makers are "jointly liable" with the borrower. See *Baird v. Herr*, 64 N.D. 572, 254 N.W. 555 (1934); *First Nat. Bank v. Burdick*, 51 N.D. 508, 200 N.W. 44 (1924); and *First Nat. Bank of McClusky v. Meyer*, 30 N.D. 388, 152 N.W. 657 (1915). The *Meyer* case applied the uniform Negotiable Instruments Act in holding with regard to an accommodation maker:

"The fact that no personal consideration passed to the defendant, Meyer, and that this fact was known to the plaintiff, makes no difference in the law. No direct consideration to him, indeed, was necessary. If a suretyship at all, the suretyship is in the form of an independent and absolute undertaking. It is a contract whereby the surety becomes bound primarily to the creditor to save him harmless independently, and whether the principal debtor makes default or not." 152 N.W. at 659.

Some cases subsequent to the UCC from other jurisdictions appear to be in accord. See, e. g., *Rushton v. U. M. & M. Credit Corporation*, 434 S.W.2d 81 (Ark.1968), and *Roller v. Jaffee*, 387 Pa. 501, 128 A.2d 355 (1957). Section 41–01–03, NDCC (1–103, UCC), specifies that the principles of law and equity, including the law merchant, unless displaced by particular provisions, are to be considered supplemented.

Section 41–03–73, NDCC (3–606, UCC), provides in part:

"1. The holder discharges any party to the instrument to the extent that without such party's consent the holder

a. . . .

b. unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Guided by § 41–01–02, NDCC (1–102, UCC), and our usual statutory rules of interpretation, particularly §§ 1–02–02 and 1–02–03, NDCC, relating to how ordinary words and phrases are to be understood, and §§ 1–02–38 and 1–02–39, NDCC, relating to the use of intrinsic aids in the construction of ambiguous statutes, it would appear that the defense of unjustifiable impairment is, under appropriate circumstances, available to "any party" to a note, including the maker.

The liability of the "maker" is described in § 41–03–50, NDCC (3–413, UCC). White and Summers discuss this subject under the heading, "Contractual Liability—Liability of the Maker, 3–413(1)" at § 13–7, commencing at page 498 of the Second Edition. Therein we find comments such as: "the maker's liability is unconditional and absolute," and quoting from 3–118(e), UCC (§ 41–03–18(5), NDCC), "unless the instrument otherwise specifies two or more persons who sign as maker . . . as part of the same transaction are jointly and severally liable . . . ."

Also, in White and Summers, Second Edition, we find a discussion of "Accommodation Parties, 3–415, 3–416, 3–606—General Liability of Article Three Surety," § 13–12, commencing at page 516. Therein is stated:

"It is common practice for a surety to appear on a note either as a co-maker or as an indorser. Assume for example that a father is going to be the surety on his sons's contract to pay for a new car. The father may sign the note as co-maker or he may simply indorse the note. As we will see, in either case he is what the Code calls an 'accommodation party' and owes the holder of the note the obligation of a maker, or of an indorser as the case may be (although he will have certain defenses not normally available to makers or indorsers against all but holders in due course without notice of his accommodation status).

". . . Since the creditor is entitled to only one performance and the debtor receives the benefit of the transaction, the sure-ty's obligation is undertaken with the expectation that the debtor will meet his commitment to the creditor. . . . If the creditor releases the principal debtor and so deprives the surety of the right to recover from the principal by being subrogated to the creditor's rights, or *if the creditor fails to perfect a security interest in collateral given by the debtor* and so is unable to recover his debt out of the collateral, *the surety's burden will be increased.* The law assumes that the surety has not assented to such increased burdens. Consequently the law has traditionally held that *conduct by the creditor which increases the surety's risk discharges the surety.*" [Emphasis supplied.]

If an accommodation maker's obligation is the same as that of the maker because of § 41–03–18(5), NDCC (3–118(e), UCC), then it can be argued that because of § 41–03–73, NDCC (3–606, UCC), all makers, not only accommodation makers who are, in fact, sureties only, are entitled to use the defenses provided for sureties. That logic, if applied in all circumstances, destroys any distinction between sureties and makers. Perhaps this perceived ambiguity in the UCC led the Court of Civil Appeals of Texas, El Paso, to conclude as it did in the case of *Brunner v. Smith*, 467 S.W.2d 565 (Tex. Civ.App.1971). *Brunner* held that a person signing a note as a maker has no right to look to the collateral that was pledged. The Texas court did not mention § 3–606, UCC.

A note writer, Nathaniel Ruff, in 8 Indiana L.Rev. 522 (1974–1975), said that with the possible exception of *Brunner v. Smith, supra,* no case has been found under the UCC denying accommodation parties coverage under § 3–606. We note that *Brunner* has not been cited by any other court but is noted in the Annotation, Uniform Commercial Code—Article 3, 23 A.L.R.3d 932. See also, Peters, "Suretyship Under Article 3 of the Uniform Commercial Code", 77 Yale L.J. 833 (1968); Jackson and Kronman, "A Plea for the Financing Buyer," 85 Yale L.J. 1 (1975); and Anderson, Uniform Commercial Code, 2d Edition, §§ 3–118, 3–413, 3–415, 3–416, and 3–606.

██ The UCC cannot be applied in a vacuum. In this case there is no evidence upon which a legal argument can rest, on the matter of whether or not Bruce Lawrence, or anyone else for that matter, knew when the note was signed that there was no security available in the collateral being pledged. That cannot have been material to the parties in this case in light of the conceded fact that all collateral was subject to prior perfected security interests.

We conclude that Bruce Lawrence's burden as surety was not, in fact, increased by reason of the failure of Beneficial to perfect a security interest in the pledged collateral. If Beneficial would have perfected a security interest in the collateral pledged in this case, Bruce Lawrence would be in the same situation as he is now—liable, and no collateral to resort to. Whether or not a new security agreement and a new financing statement are ever required under the UCC to protect an accommodation party, when there is a refinancing, is a moot issue in this case.

Hart and Willer, in 2 Bender's Uniform Commercial Code Service, § 13.24(4), at 13 69, state:

"Any discharge under subsection (1) of Section 3–606 is available only 'to the extent' that the conduct affects the accommodation party's obligation. This can be fairly readily determined where the conduct affects collateral. The question is, what was the collateral worth of which the accommodation party was deprived or as to which his rights were otherwise diminished? If a holder releases or otherwise impairs the collateral so that it is no longer available to satisfy all or part of the obligation of the principal debtor, its value must be determined as of that time and subtracted from the accommodation party's obligation. He remains liable for that part of the debt due which is not adversely affected. If the value equalled or exceeded the debt, the discharge is total."

Because there was no value as security in the collateral at the time Beneficial failed to perfect a security interest therein, the failure to perfect did not impair Bruce Lawrence's rights. There is no reason to discuss the other arguments made in this case. The judgment is reversed.

ERICKSTAD, C. J., and VANDE WALLE, SAND and PAULSON, JJ., concur.